UNITED STATES of America, Appellee,

v.

ONE 1945 DOUGLAS C–54 (DC–4) AIR-CRAFT, SERIAL NUMBER 22186.

APPEAL OF J. Michael STUMPFF.

No. 79–1057.

United States Court of Appeals,
Eighth Circuit.

Submitted May 14, 1979.

Decided Aug. 17, 1979.

Philip F. Cardarella, Kansas City, Mo., for appellant.

Kenneth Josephson, Asst. U. S. Atty. (on brief) and Ronald S. Reed, Jr., U. S. Atty., Kansas City, Mo., argued, for appellee.

Before BRIGHT, HENLEY and McMILLIAN, Circuit Judges.

HENLEY, Circuit Judge.

Intervenor J. Michael Stumpff appeals the judgment of the district court[1] ordering that a DC–4 aircraft to which he holds legal title to be forfeited to the United States pursuant to 21 U.S.C. § 881(a)(4). Our review of the record indicates that Stumpff may lack standing to challenge the forfeiture. Thus, we remand the case to the district court for such proceedings as are necessary to address the questions and considerations raised herein.

This forfeiture action was filed against the subject aircraft as a result of a Drug Enforcement Administration investigation into the illicit drug dealings of one Albert Kammerer in the Kansas City, Missouri area. According to the government, Kammerer and Stumpff jointly searched for an aircraft to facilitate their drug trafficking activities and arranged to have the DC–4 flown to the Kansas City municipal airport where it was stored in a hangar pending the completion of certain repairs. Although Kammerer supplied all of the purchase money for the aircraft, title to it was placed in Stumpff's name. DEA officers first learned of the aircraft from conversations between Kammerer and Stumpff which had been recorded pursuant to a court authorized wiretap of Kammerer's residence telephone. These conversations, as later supplemented by the explanatory depositions

---

1. The United States District Court for the Western District of Missouri, The Honorable John W. Oliver, District Judge, presiding.

of Kammerer and his wife Janice, establish that the two men intended to use the aircraft primarily as a means of transporting large shipments of marijuana into the United States from Mexico.

With the evidence gained from their wiretaps, DEA officers obtained a search warrant and seized several thousand pounds of hashish and marijuana from the Kammerer residence. Kammerer pleaded guilty to criminal charges stemming from his possession of the drugs. The DEA then initiated forfeiture proceedings against the DC–4 aircraft. Stumpff was granted leave to intervene by the district court because of his owner of record status.

The government freely admits that its investigation produced no evidence showing that either Kammerer or Stumpff actually used the aircraft to transport marijuana or other controlled substances. Nor was it able to link the aircraft to a specific future drug transaction planned by either man. The wiretap conversations and Kammerer depositions establish only that the men intended to use the aircraft to transport drugs. And, in furtherance of that general intended use, they undertook to have the aircraft repaired and to retain a qualified pilot. The repairs to the aircraft had not been completed at the time it was seized by DEA officers, nor had a pilot been employed.

The district court found, however, that this evidence of "intended use" was sufficient to satisfy the forfeiture requirements of 21 U.S.C. § 881(a)(4). That statute provides in pertinent part:

(a) The following shall be subject to forfeiture to the United States and no property right shall exist in them:

. . . . .

(4) All conveyances, including aircraft, vehicles, or vessels, which are used, *or are intended for use,* to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of [controlled substances]. (Emphasis added.)

The court rejected Stumpff's arguments that it had misconstrued the statute or that the statute, so construed, was unconstitutional as applied to the aircraft because there was no *actus rea* or overt act linking the aircraft to a specific illegal transaction.[2] Further, the court refused to make a finding as to the ownership of the aircraft, reasoning that neither Kammerer nor Stumpff had a valid defense to the forfeiture because they jointly intended to use the aircraft to transport marijuana.

We have carefully reviewed the record, and in particular the transcripts of the wiretap conversations and the Kammerer depositions, and we agree with Stumpff that the district court's decision raises serious questions concerning the proper construction of § 881(a)(4) and the constitutionality of its application to the present situation. *See generally United States v. U. S. Coin and Currency,* 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971); *United States v. One 1974 Cadillac Eldorado Sedan,* 548 F.2d 421 (2d Cir. 1977); *United States v. One 1972 Datsun,* 378 F.Supp. 1200 (D.N.H. 1974); *United States v. One 1970 Buick Riviera,* 374 F.Supp. 277 (D.Minn.1973). We do not rule upon these questions, however, since it is doubtful that Stumpff has standing to raise them in opposition to the forfeiture. *See Urban Contractors Alliance of St. Louis v. Bi-State Development Agency,* 531 F.2d 877 (8th Cir. 1976).

It is the owner or owners of the res who have standing to challenge a forfeiture. *United States v. One 1971 Lincoln Continental,* 460 F.2d 273, 274 (8th Cir. 1972); *Gen. Finance Corp. of Fla. South v. United States,* 333 F.2d 681 (5th Cir. 1964). Broadly speaking, ownership may be defined as having a possessory interest in the res, with its attendant characteristics of dominion and control. *United States v. Fifteen Thousand Five Hundred Dollars,* 558 F.2d 1359 (9th Cir. 1977). The possession of bare legal title to the res may be insufficient to establish ownership. *See, for ex-*

2. Stumpff stated broad claims under the first, fourth, fifth and eighth amendments to the Constitution.

ample, *United States v. One 1971 Porsche Coupe*, 364 F.Supp. 745 (E.D.Pa.1973), where the court determined that the forfeited vehicle's owner of record was only a "nominal owner" who could not challenge the forfeiture because he had made a gift of the vehicle to his son, who had "sole possession and exercised dominion and control over it."

The government chose not to oppose Stumpff's petition to intervene because the Federal Aviation Administration certificate of aircraft registration for the DC–4 had been issued in Stumpff's name. But it did call to the district court's attention that Stumpff's standing to challenge the forfeiture was doubtful since, in its view, Kammerer was the aircraft's true owner. We believe the record provides some support for the government's suggestion that Stumpff lacks standing to intervene.

While it is true that Stumpff delivered the purchase money to the seller and listed himself as the purchaser on the bill of sale for the aircraft, the district court found that Kammerer put up all of the purchase money. And Kammerer stated in his deposition that he considered himself the aircraft's owner. When questioned by the government as to why the bill of sale and FAA registration certificate bore Stumpff's name, Kammerer first testified that he "didn't particularly want to own an airplane." Further questioning revealed that he lacked "the financial capability other than holding money" to be listed as the aircraft's owner on public documents.

The mere fact that the certificate of aircraft registration was issued to Stumpff does not determine rights of ownership in the aircraft as between Kammerer and Stumpff. Such certificates are issued for registration purposes only and are not certificates of title.[3] Significant is the fact that on January 1, 1978 Stumpff, at Kammerer's request, tendered a blank bill of sale for the aircraft to Kammerer. Kammerer did not complete the document or register it with FAA so as to openly transfer title to himself, but instead used it as collateral to obtain bond money after his arrest. This transaction seems to indicate that Kammerer, and not Stumpff, exercised dominion and control over the aircraft and thus was its true owner. If this reading of the record proves correct upon further consideration by the district court, and it is established that title to the aircraft was placed in Stumpff's name merely as a subterfuge to conceal the financial affairs and drug dealings of Kammerer, then Stumpff's intervention should be dismissed.

We do not at this time deem it necessary to vacate the district court's order of forfeiture because of doubt over Stumpff's standing to challenge that order and the fact that Kammerer has chosen not to become a party to these proceedings. The case is remanded to the district court for such proceedings consistent with this opinion as are necessary to address the issue of intervenor's standing and other matters raised herein.

---

**3.** 49 U.S.C. § 1401 provides in pertinent part: Registration shall not be evidence of ownership of aircraft in any proceeding in which such ownership by a particular person is, or may be, in issue.

*See also Haynes v. General Elect. Credit Corp.*, 432 F.Supp. 763 (W.D.Va.1977), *aff'd*, 4th Cir., 582 F.2d 869; *Texas Nat'l Bank of Houston v. Aufderheide*, 235 F.Supp. 599 (E.D.Ark.1964).