**UNITED STATES of America**

v.

**PREMISES KNOWN AS 427 CHESTNUT STREET, READING, PENNSYLVANIA, a Parcel of Real Property and All Improvements Thereon, and All Appurtenances Thereto, Lying in Berks County, Pennsylvania and Premises Known as 1021 Cotton Street, Reading, Pennsylvania, a Parcel of Real Property and All Improvements Thereon, and All Appurtenances Thereto, Lying in Berks County, Pennsylvania and One 1987 Pontiac Firebird Trans Am VIN # 1G2FW21F5HL225309 and Any and All Proceeds From the Sale of Said Property.**

Civ. A. No. 89–3296.

United States District Court,
E.D. Pennsylvania.

Feb. 26, 1990.

two houses and an automobile which the government maintains were used to facilitate drug sales and were also purchased with income from drug sales. This matter was tried without a jury before this court in Easton, Pennsylvania, on January 30, 1990. After listening to testimony and considering the evidence submitted in this case, we make the following findings of fact and state conclusions of law, pursuant to Fed.R.Civ.P. 52(a).

## FINDINGS OF FACT

1. George Perez is an individual who has been actively engaged in the sale and distribution of controlled substances, including cocaine. William R. Hausmann, Jr., a member of the Asset Removal Team of the Drug Enforcement Agency, said that this dated from, at least, January, 1987, and the Reading Police received information regarding Perez's involvement with drugs in early 1986. George Perez has held minimum wage jobs and has a sister named Vashti Gonzalez who is employed as a teacher's assistant.

2. George Perez has obtained substantial monies with the proceeds obtained from his sales of controlled substances during this period.

3. On December 1, 1986, 1021 Cotton Street, Reading, Pennsylvania, was conveyed from Mary E. Schwamback to Vashti T. Perez. (Gov't Exh. 1). George Perez negotiated with the realtor for this sale and gave the realtor money for a downpayment. Vashti applied for and received a mortgage. The property sold for $13,000. In a statement made to the Reading Police in the early morning of January 22, 1989, Vashti said that George Perez had bought 1021 Cotton Street and she paid the mortgage. George Perez resided at 1021 Cotton Street from its purchase until August, 1987. In August, 1987, Vashti Perez married Angel Gonzalez and the two moved to this dwelling, where they continue to reside.

4. On July 7, 1987, 427 Chestnut Street, Reading, Pennsylvania, was conveyed from Jennie Cambria to George D. Perez and

Serena H. Dobson and James H. Swain, Asst. U.S. Attys., Philadelphia, Pa., for plaintiff.

Jerome R. Smith, Reading, Pa., for defendant.

## DECISION AND ORDER

VAN ANTWERPEN, District Judge.

The captioned matter is a civil action for forfeiture of property brought by the government, pursuant to 21 U.S.C. § 881(a)(4), § 881(a)(6), and § 881(a)(7) and 28 U.S.C. § 2461. The property consists of

Vashti Perez. (Gov't Exh. 2). It was George Perez who negotiated with the owner's husband and who, with his sister Vashti, attended settlement for the property. Jorge Perez, father of George and Vashti, although the reputed instigator of this purchase did not attend settlement. Vashti testified that her father gave her $27,000 in cash to take with her to the settlement. Jorge Perez allegedly gave his daughter this large amount of cash at a time when he, himself, was an unemployed minister who was collecting Social Security Disability payments.

5. On December 28, 1987, George Perez transferred his interest in 427 Chestnut Street to his sister Vashti. (Gov't Exh. 3). In deposition testimony, Vashti had stated that this transfer was done at her father's suggestion because George was getting into "trouble", selling drugs.

6. Evidence was introduced regarding substantial outlays of money made by George Perez at 427 Chestnut Street for furniture, house repairs, insurance, jewelry, and attorney fees from December 28, 1987 through December 26, 1988. (Gov't Exh. 9). Also, on February 9, 1988, George Perez, a/k/a Jorge Perez, purchased from Thomas R. and Maria T. Cejas premises at 3209 Conrad Street, Tampa, Florida, with a cashier's check for $45,000 and $3,000 cash.

7. No credible evidence was introduced that George Perez was substantially gainfully employed in legal endeavors since, at least, January, 1987. Any employment he was said to have was at minimum wage.

8. Angel Gonzalez, George Perez's brother-in-law, testified that he bought a 1987 Firebird Trans Am, VIN No. 1G2FW21F5HL225309, from A.W. Golden, Inc. on or about November 3, 1987. Although Mr. Gonzalez signed the documents for this transaction, the auto dealer employee, Dennis Rahn, testified that it was George Perez who expressed most interest in the car, who ordered optional features, and who paid large amounts of cash ($9,000, one day and $6,000, another) for the car at the time of purchase. Mr. Rahn also testified that it was George Perez's car that was used as a trade-in. Mr. Rahn also saw George drive the car past the dealership a short time later. Angel Gonzalez testified that George paid for garage space for the car. In a prior criminal proceeding, Angel had testified that George drove the car and he sat in the front passenger seat.

9. On January 21, 1989, officers of the Reading Bureau of Police executed a search warrant at 427 Chestnut Street, Reading, Pennsylvania. There, they found and seized scales of the type generally used to weigh controlled substances including cocaine, materials of the type used to package cocaine for distribution, records of drug transactions and cash in the amount of $3,471.00, as well as other items and documents.

10. On January 21, 1989, officers of the Reading Bureau of Police executed a search warrant at 1021 Cotton Street, Reading, Pennsylvania. There, they found and seized approximately four ounces of cocaine, which were attached to the rafters in the basement, and "suspected packaging material." Sandwich "baggies" and small ($1'' \times 2''$) plastic bags were found on a dresser in the front bedroom and in a closet on the first floor.

11. On January 21, 1989, George Perez was arrested by the Reading Bureau of Police on charges of possession of a controlled substance, possession with intent to deliver, and criminal conspiracy. He later pleaded guilty to charges which included these. The offenses charged took place in late 1987 and on January 21, 1989.

12. In a statement made to the Reading Police in the early morning of January 22, 1989, Angel Gonzalez had stated that "everyone knew" that George Perez was involved in drug trafficking. He himself had given George consent to hide the cocaine at 1021 Cotton Street. His wife, Vashti, had denied any knowledge of the cocaine which had been hidden in the basement.

## DISCUSSION

The United States is seeking an order of forfeiture and condemnation with respect

to each of the items of property named as defendants in this action. The requests for forfeiture are made on the authority of 21 U.S.C. §§ 881(a)(6) and 881(a)(7) which provide as follows:

§ 881(a)—The following shall be subject to forfeiture to the United States and no property right shall exist in them:

. . . .

(6) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments and securities used or intended to be used to facilitate any violation of this subchapter, except that no property shall be forfeited under this paragraph, to the extent of the interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.

(7) All real property, including any right, title, and interest (including any leasehold interest) in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this title punishable by more than one year's imprisonment, except that no property shall be forfeited under this paragraph, to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.

The government's burden in the instant civil forfeiture proceeding is to prove that there is probable cause to believe that the property being proceeded against is subject to forfeiture. This standard of proof is specifically set forth in 19 U.S.C. § 1615[1], which states in pertinent part that:

In all suits or actions ... brought for the forfeiture of any vessel, vehicle, aircraft, merchandise, or baggage seized under the provision of any law relating to the collection of duties on imports or tonnage, where the property is claimed by any person, the burden of proof shall lie upon such claimant; ... *Provided,* That probable cause shall be first shown for the institution of such suit or action, to be judged of by the court. . . .

██ The probable cause which the government must show is a reasonable ground for belief that the property is subject to forfeiture supported by less than *prima facie* proof but more than mere suspicion. In making its probable cause showing the government must also establish some nexus between the property to be forfeited and the criminal activity defined by the statute. *United States v. Premises Known as 2639 Meetinghouse Road,* 633 F.Supp. 979, 986 (E.D.Pa.1986). There is no requirement that the government introduce evidence of particular drug transactions to meet the probable cause standard. *Id.* at 987 (citing *United States v. Four Million, Two Hundred Fifty–Five Thousand Dollars in United States Currency,* 762 F.2d 895, 904 (11th Cir.1985), *cert. denied* 474 U.S. 1056, 106 S.Ct. 795, 88 L.Ed.2d 772 (1986)).

Once the plaintiff has shown that there is probable cause to believe that the defendants were used to facilitate illegal drug transactions (21 U.S.C. § 881(a)(7)), or that they were purchased with proceeds traceable to illegal drug transactions (21 U.S.C. § 881(a)(6)), the plaintiff has sustained its initial burden of proof.

██ The evidence submitted in this case by the plaintiff, including the fact that drugs (four ounces of cocaine) and suspected packaging material were stored at 1021

---

**1.** 19 U.S.C. § 1615 is made applicable to 21 U.S.C. § 881 forfeiture proceedings by 21 U.S.C. § 881(d). *See also: United States v. $55,518.05*

*in United States Currency,* 728 F.2d 192, 195–196 n. 4 (3d Cir.1984).

Cotton Street and that drug sales records, scales and packaging materials were stored at 427 Chestnut Street, shows that there was probable cause to forfeit each of those parcels of real property. Further, the evidence shows probable cause to believe that each of the defendant parcels of real property and the defendant Firebird Trans Am were purchased by George Perez and that his source of income for those purchases was illegal drug sales.

■ Upon completion of this showing of probable cause by the United States, the claimants may defeat the claim of forfeiture, to the extent of their interest(s) in the defendant properties only if they can (a) show that the property is not subject to forfeiture, or (b) establish by a preponderance of the evidence that, as to their interest in each defendant party, they were without knowledge of or did not consent to the acts or omissions by reason of which the property is subject to forfeiture. 21 U.S.C. §§ 881(a)(6) and 881(a)(7); *United States v. Property Known as 6109 Grubb Road,* 886 F.2d 618 (3d Cir.1989), *reh. denied,* 890 F.2d 659 (3d Cir.1989). The claimants bear the burden of proof on the lack of knowledge issue. The court is not required to believe the claimants' testimony even if uncontradicted. *Grubb Road,* 886 F.2d at 626 n. 6 (citing *Matter of Decker,* 595 F.2d 185, 190 (3d Cir.1979); 9 C. Wright & A. Miller, Federal Practice and Procedure § 2526 (1971)).

If the claimant does not establish the "no knowledge" defense, the court must then decide whether he or she has established a no consent defense. *Grubb Road,* 886 F.2d at 627. In *Calero–Toledo v. Pearson Yacht Co.,* 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974), a case which predates the current statutory "innocent owner" provisions of 21 U.S.C. § 881(a), the Supreme Court noted that requiring that a claimant prove "that he had done all that reasonably could be expected to prevent the prescribed use of his property ..." was not unreasonable in forfeiture cases. *Id.* at 689, 94 S.Ct. at 2094.[2]

In the instant case, Vashti claims the two pieces of real property; her husband, Angel, claims the automobile. We shall discuss below the application of the law, heretofore set out, to each of the subject properties.

*1021 Cotton Street*

The government seeks forfeiture of 1021 Cotton Street, pursuant to 21 U.S.C. § 881(a)(6), as "proceeds" traceable to drug transactions. At trial, the government introduced a statement made by Vashti in the early morning of January 22, 1989. Vashti was asked the following series of questions:

Q. Who is the legal owner of 1021 Cotton Street, Reading, PA.

A. I am.

Q. Who else resides there with you?

A. Just Angel Gonzalez, my husband.

Q. Who did you purchase the house from?

A. Well, George, my brother, bought the house and I just took over the morgage [*sic*] payments.

Q. When George Perez bought the house, in whose name was it listed?

A. Mine.

■ Also, at trial, the government presented evidence that it was George Perez who had negotiated for the sale and who had given the realtor money for a downpayment. The government has established probable cause to believe that 1021 Cotton Street was purchased with proceeds from

---

**2.** In *Grubb Road,* 886 F.2d at 627, the Third Circuit, in remanding the case to the district court, stated:

What, if any, applicability the following dictum in *Calero–Toledo v. Pearson Yacht Co.,* 416 U.S. 663, 689, 94 S.Ct. 2080, 2094, 40 L.Ed.2d 452 (1974) has to the innocent owner defense will be for the district court to decide:

"that he [claimant] had done all that reasonably could be expected to prevent the proscribed use of his property...." The problem is particularly daunting where, as here, entireties property is involved....

The Third Circuit, therefore, appears to consider the *Calero–Toledo* dictum worth considering in evaluating the "innocent owner" defense.

drug transactions.[3]

At trial, Vashti claimed that her statement given on January 22, 1989 had been given when she was tired and nervous. She said, at trial, that George had nothing to do with the purchase of 1021 Cotton Street, that her father had helped her buy it, that she had used money she had saved and had taken out a loan from a bank which she is paying off now. She also said that she did not know that George had any involvement with drugs.

■ When the trial judge is the finder of fact, the determination of the credibility of the witnesses lies within his province. *Milgram v. Loew's, Inc.*, 192 F.2d 579 (3d Cir.1951). We do not believe Vashti when she speaks of her independent acquisition of 1021 Cotton Street. Her demeanor on the stand was often evasive, with sudden lapses of memory in her favor. Her manner of testifying was not such as to inspire much confidence in what she had to say. She contradicted her prior sworn statement. George Perez had been known to be selling and distributing drugs since 1986; 1021 Cotton Street was purchased in December, 1986. Other than Vashti's bare word, she has introduced no evidence that she did not know of the provenance of the funds used to buy 1021 Cotton Street. We, therefore, find that she has not met her burden of proving no knowledge of the tainted source of the funds used to acquire 1021 Cotton Street. Accordingly, we find that 1021 Cotton Street is subject to forfeiture, pursuant to 21 U.S.C. § 881(a)(6).

■ At trial, the government also successfully established probable cause to believe that this property had been used to facilitate the commission of a drug offense, pursuant to 21 U.S.C. § 881(a)(7). Four ounces of cocaine had been found, attached to the rafters of the basement, and plastic "suspected packaging material" had been found on a bedroom dresser and in a first-floor closet. In order to avoid forfeiture of this property, Vashti must prove lack of knowledge or lack of consent to this use of the property. At trial, Vashti denied that she knew anything about the cocaine secreted in the basement or about her husband's involvement with the cocaine. Given the obscurity of the cocaine's hiding place, it is possible that an unrelated person in Vashti's position would not know that it was in the house. However, because of her untruthfulness in other matters, we do not believe Vashti when she testified that she knew nothing and gave no consent. Therefore, the government's evidence can trigger the forfeiture of the property pursuant to 21 U.S.C. § 881(a)(7). However, we need not rely exclusively on the foregoing, because we have already found a forfeiture under 21 U.S.C. § 881(a)(6).

### 427 Chestnut Street

At trial, the government also successfully established probable cause to believe that this property had been used to facilitate the commission of a drug offense, pursuant to 21 U.S.C. § 881(a)(7). At that address, the police found scales of the type generally used to weigh controlled substances, materials of the type used to package cocaine for distribution, records of drug transactions and cash. At trial, Vashti gave no testimony at all regarding her knowledge of the contents of 427 Chestnut Street. We, therefore, conclude that she has failed to prove no knowledge regarding the use of this property to facilitate drug transactions and the property is, thus, liable to forfeiture under 21 U.S.C. § 881(a)(7).

■ The government also seeks forfeiture, pursuant to 21 U.S.C. § 881(a)(6), arguing that 427 Chestnut Street constitutes "proceeds" traceable to drug transactions. In July of 1987, George and Vashti purchased 427 Chestnut Street, allegedly at the instigation of their father, who also allegedly provided $27,000 in cash to finance the transaction. At the time, their

---

**3.** We believe that, for the purposes of this proceeding, Vashti, who has made mortgage payments on the property, has sufficient interest in the property to be considered an "owner".

father, a minister, had been out of work and had been collecting Social Security Disability payments for some time. Yet, inexplicably, Mr. Perez was able to hand over to his daughter $27,000 in cash to take with her to the settlement for 427 Chestnut Street. Moreover, when George's interest was conveyed to Vashti in December, 1987, Vashti certainly knew of George's drug trafficking. According to her deposition testimony, Vashti had been told by her father that the house should be put in her name alone, because George was getting into "trouble" selling drugs. This clearly constitutes knowledge *and* consent as to the receipt of property which constitutes "proceeds" traceable to drug transactions. Since Vashti has failed to prove the "innocent owner" defense as it applies to 427 Chestnut Street, we find that this property is also forfeitable under 21 U.S.C. § 881(a)(6).

*The 1987 Pontiac Firebird Trans Am VIN 1G2FW21F5HL225309*

■ With regard to this automobile, we question whether Angel Gonzalez is more than a nominal owner. We believe that his interest in the automobile is insufficient to contest this forfeiture. In *United States v. 280,505 Dollars*, 655 F.Supp. 1487, 1495 (S.D.Fla.1986), the court stated:

To contest a forfeiture action, an individual must first demonstrate an interest in the seized property sufficient to satisfy the court of his standing as a claimant. *United States v. Three Hundred Sixty Four Thousand Nine Hundred Sixty Dollars, ($364,960) in U.S. Currency*, 661 F.2d 319, 326 (5th Cir.1981). This burden is on the claimant. *Rakas v. Illinois*, 439 U.S. 128, 130–31 n. 1, 99 S.Ct. 421, 423–24 n. 1, 58 L.Ed.2d 387 (1978). In general terms, ownership may be defined as a possessory interest in the seized property from which flows the right to exercise dominion and control. *United States v. One 1945 Douglas C–54 (DC–4) Aircraft*, 604 F.2d 27, 28 (8th Cir.1979). However, "[t]he possession of bare legal title to the res may be insufficient to establish ownership" where, for instance, the title holder is only a nom-

inal owner. *Id.* at 28–29; *see also United States v. One 1945 Douglas C–54 (DC–4) Aircraft*, 647 F.2d 864, 866–67 (8th Cir.1981).

Also, the court in *United States v. One 1981 Datsun 280 ZX*, 563 F.Supp. 470, 474–75 (E.D.Pa.1983) opined:

In order to challenge a forfeiture, the claimant must own the *res*. See, *e.g.*, *United States v. One 1945 Douglas C–54*, 604 F.2d 27, 28 (8th Cir.1979) *on appeal after remand*, 647 F.2d 864, 866 (8th Cir.1981), *cert. denied sub nom.*, *Stumpff v. United States*, 454 U.S. 1143, 102 S.Ct. 1002, 71 L.Ed.2d 294 (1982); *United States v. Fifteen Thousand Five Hundred Dollars*, 558 F.2d 1359, 1361 (9th Cir.1977); *General Finance Corp. v. United States*, 333 F.2d 681, 682 (5th Cir.1964); *United States v. One 1971 Porshe Coupe*, 364 F.Supp. 745, 748 (E.D.Pa.1973). Ownership can be evidenced in a variety of ways. Courts generally look to indicia of dominion and control such as possession, title and financial stake. *See One 1945 Douglas C–54*, 604 F.2d at 28–29, *on appeal from remand*, 647 F.2d at 866; *Fifteen Thousand Five Hundred Dollars*, 558 F.2d at 1361; *General Finance Corp.*, 333 F.2d at 682; *One 1971 Porshe Coupe*, 364 F.Supp. at 748. However, as the Eighth Circuit noted in *One 1945 Douglas C–54*, "[t]he possession of bare legal title to the res may be insufficient to establish ownership." 604 F.2d at 28. In *One 1971 Porshe Coupe*, a father had given his son the car as a gift, retaining legal title in his own name. However, the son had possession of the car and exercised dominion and control over it. In determining that the father did not have sufficient interest in the car to challenge forfeiture, the court looked to who would actually suffer from the loss of the vehicle. 364 F.Supp. at 748. This inquiry provides an excellent focus for determining ownership in the forfeiture context.

We believe that the facts require the conclusion that George was the real owner of the automobile. It was he who expressed most interest in it at the dealer-

ship, who ordered the optional features, who paid the bulk of the large cash price and whose car (a Pulsar) was used as a trade-in. It was also George who paid for the garage space for the car. George was seen driving the car past the dealership a short time after its purchase. Angel had also testified in a prior criminal proceeding that George drove the car and he sat in the front passenger seat. All of this leads us to disbelieve the testimony of Angel Gonzalez that he paid for and was the owner of the car and to conclude that Angel Gonzalez was no more than a nominal owner of the car. Angel may have had legal title, but George had a high financial stake in the car, was spotted in control of it, and would suffer from its loss.

Even assuming, *arguendo*, that Angel could be made out to be the owner of the automobile, he has not made out a successful "innocent owner" defense. To counter Angel's assertions of paying for the car himself, the government has presented the testimony of Mr. Rahn, an employee of the car dealership, who stated that George furnished the bulk of the cash, in envelopes, when the car was purchased in November, 1987. Also, in his statement to the police on January 22, 1989, Angel admitted that "everyone knew" that George trafficked in drugs. If Angel knew that George trafficked in drugs, and if Angel continued to accept this very expensive automobile as his own, he cannot be said to be an "innocent owner". Therefore, the automobile should be declared forfeited under 21 U.S.C. § 881(a)(6).

## CONCLUSIONS OF LAW

1. This matter was commenced by the filing of a complaint by the United States pursuant to 21 U.S.C. § 881(a)(4), § 881(a)(6), § 881(a)(7) and 28 U.S.C. § 2461. This court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1345 and 1355 and 21 U.S.C. § 881(d). Venue is proper before this court under 28 U.S.C. § 1395(b).

2. The real property located at 1021 Cotton Street was used or intended to be used to facilitate the commission of a viola-

tion of Title 21 of the United States Code within the meaning of 21 U.S.C. § 881(a)(7).

3. The real property located at 427 Chestnut Street in Reading, Pennsylvania, was used or intended to be used to facilitate the commission of a violation of Title 21 of the United States Code within the meaning of 21 U.S.C. § 881(a)(7).

4. The 1987 Pontiac Trans Am was acquired with the proceeds of unlawful sales or exchanges of controlled substances and is therefore proceeds within the meaning of 21 U.S.C. § 881(a)(6).

5. The real property described in paragraphs 2 and 3 above was also acquired with the proceeds of unlawful sales or exchanges of controlled substances and is therefore proceeds within the meaning of 21 U.S.C. § 881(a)(6).

6. Since neither Vashti nor Angel Gonzalez has proven that he or she was an "innocent owner", the subject property shall be declared forfeited.

An appropriate order follows.

## JUDGMENT AND DECREE OF FORFEITURE

Upon consideration of the pleadings and the matters presented at the trial in this matter of January 30, 1990 and the findings and opinion of the Court it is hereby ORDERED, ADJUDGED AND DECREED that:

1. Plaintiff's request for forfeiture is granted.

2. The defendant real property, 427 Chestnut Street, Reading, Pennsylvania and all improvements thereon and appurtenances thereto described as follows:

ALL THAT CERTAIN two-story brick dwelling house with stone front and lot of ground upon which the same is erected, situate on the north side of Chestnut Street, between Fourth and Fifth Streets, being No. 427, in the City of Reading aforesaid, adjoining property now or late of Harry Steitler on the East, on the North by a three (3) feet wide alley, on the West by property now or late of Sarah A.E. Fink and Ellen F.

Fink, and on the South by said Chestnut Street.

CONTAINING on said Chestnut Street 16 feet and in depth north and south 90 feet, more or less to said 3 feet wide alley.

being the same property more fully described in Record Book No. 1950 beginning at page 2250 and at Record Book No. 1980 beginning at page 1859 in the office of the Recorder of Deeds for Berks County, Pennsylvania; is forfeited to the United States of America.

3. The right, title and ownership of Vashti Perez also known as Vashti Perez Gonzalez and her heirs and assigns in 427 Chestnut Street, Reading, Pennsylvania is hereby extinguished and all right, title and ownership to 427 Chestnut Street, Reading, Pennsylvania is vested in the United States of America.

4. The defendant real property 1021 Cotton Street, Reading, Pennsylvania, and all improvements thereon and appurtenances thereto described as follows:

ALL THAT CERTAIN two-story frame dwelling house and the lot or piece of ground upon which the same is erected, situated on the north side of Cotton Street, between 10th and Maple Streets, being No. *1021 Cotton Street, in the City of* Reading, Berks County, Pennsylvania, bounded and described as follows, to wit:

On the North by property now or late of John A. Merkle; On the South by said Cotton Street; On the East by property now or late of Jay H. Kretz; and On the West by property now or late Joseph Kremp Estate.

CONTAINING in front or width along Cotton Street 12 feet, more or less, and in depth, north and south, a distance of 85 feet, more or less.

being the same property more fully described in Record Book No. 1914 beginning at page 0669 in the office of the Recorder of Deeds for Berks County, Pennsylvania; is forfeited to the United States of America.

5. The right, title and ownership of Vashti Perez, also known as Vashti Perez Gonzalez, and her heirs and assigns in 1021 Cotton Street is hereby extinguished and all right, title and interest in 1021 Cotton Street is vested in the United States of America.

6. All right, title and interest of Angel Gonzalez in the defendant One 1987 Firebird Trans Am VIN # 1G2FW21F5HL225309 is vested in the United States of America.

7. The United States Marshal's Service shall dispose of the defendant property according to law.