952 F.2d 53
 60 USLW 2480
 UNITED STATES of America, Appellant,
v.
RD 1, BOX 1, THOMPSONTOWN, DELAWARE TOWNSHIP, JUNIATA
COUNTY, PENNSYLVANIA, as described with particularity in
Deed Book 117, Page 48, Recorder of Deed Office, Juniata
County, Pennsylvania, together with all appurtenances and
improvements thereon; Thomas D. Pennington, Horizon Savings
Assn., fka Lewistown Standard Savings and Loan Association, Appellees.
 No. 91-5200.
 United States Court of Appeals,
Third Circuit.
 Argued Aug. 6, 1991.
Decided Dec. 23, 1991.
Rehearing Denied Jan. 31, 1992.
 
 James L. West, U.S. Atty., Richard W. Sponseller (argued), Office of U.S. Atty., Harrisburg, Pa., for appellant.
 Charles A. Bierbach (argued), Bierbach & Adams, Huntingdon, Pa., for appellees.
 Before MANSMANN and ALITO, Circuit Judges, and DIAMOND, District Judge.*OPINION OF THE COURT
 MANSMANN, Circuit Judge.
 
 
 1
 In this civil forfeiture action, the United States appeals the district court's decision that particular "uses" ascribed to a certain parcel of real estate by the owner did not subject that property to forfeiture under 21 U.S.C.A. § 881(a)(7) (West Supp.1991).
 
 
 2
 We hold that because the property was admittedly pledged to obtain a home equity loan to finance an illegal drug transaction, despite the fact that the funds were not ultimately used for that purpose and were returned to the bank, forfeiture of the property is mandated by the federal narcotics laws. We will, therefore, reverse the decision of the district court.
 
 I.
 
 3
 This case originated as an in rem action by the United States to forfeit real property which the owner/claimant, Thomas Pennington, allegedly used to facilitate transactions involving illegal narcotics. The defendant property, described as "RD 1, Box 1," located in Thompsontown, Juniata County, Pennsylvania, was originally seized on October 6, 1989, pursuant to a warrant issued on the basis of a declaration signed by Ronald Halter, Special Agent of the Federal Bureau of Investigation. The complaint, filed simultaneously with the writ of seizure, asserted a number of drug-related uses of the property by Pennington and others to justify forfeiture.[1]
 
 
 4
 Discovery proceeded for many months during which time state criminal drug charges were brought against Pennington. He was subsequently convicted by a Mifflin County, Pennsylvania, jury of two violations of the Pennsylvania Crimes Code--18 Pa.Cons.Stat.Ann. § 903, criminal conspiracy and 35 Pa.Stat.Ann. § 780-113(a)(30), possession with intent to deliver a controlled substance. After the state criminal proceedings ended, a non-jury trial was held in the civil forfeiture matter before the United States District Court for the Middle District of Pennsylvania. There the government detailed, as a use of the property in violation of federal drug laws, the pledging of the property to acquire a home equity loan to finance a purchase of marijuana. This activity and, to a much less significant degree, the use of the property as the situs to initiate and receive drug-related telephone calls are the substance of this appeal.
 
 
 5
 These facts are uncontested: after confirming by telephone through an acquaintance in Arizona that marijuana was in abundant supply there, Pennington sought to acquire the necessary cash, $7,500, to bankroll a buy of approximately nine to ten pounds of that controlled substance. To this end, Pennington applied for a home equity loan with Horizon Savings and Loan Association, pledging the Thompsontown property as collateral.[2] Pennington was informed that, although he qualified for the loan, there was a 72-hour period before he would have the cash in hand. This three day wait was not compatible with Pennington's plans as he was scheduled to depart for Arizona the following day to complete the illegal transaction. Therefore, he borrowed the necessary funds for the deal from his mother. Upon his return from Arizona, Pennington returned to the bank and received the proceeds of the loan. The $7,500, in cash, remained in his house for a number of weeks after which he transferred the money to a safe in his mother-in-law's house. Pennington made two payments on the loan, and then returned the money to the bank and repaid the loan in full.
 
 
 6
 After evaluating this evidence, the district judge presiding over the non-jury trial concluded that although Pennington admitted that he applied for a bank loan intending to use the proceeds to purchase marijuana, because Pennington did not ultimately use the money to finance the transaction, the pledging of the property did not constitute a use of the property sufficient to support forfeiture.
 
 
 7
 The district court then filed an Order And Judgment in which he entered judgment against the government and in favor of the defendant property. The government has appealed.
 
 II.
 
 8
 The language of the final order entered by the district court raises a question concerning the standard of review we should utilize and requires that we examine the procedural history of this case in the district court.
 
 
 9
 During the discovery phase of this civil litigation, after depositions were taken, the government filed a motion for summary judgment on October 23, 1990. Pennington, as the claimant to the property, opposed the motion. On November 30, 1990, the district court denied the motion, reasoning that the uncontested facts concerning the use of the property did not render it subject to forfeiture as a matter of law.
 
 
 10
 The matter then proceeded to trial non-jury on January 23, 1991. On January 31, 1991, the district court entered its final order in this case:
 
 
 11
 AND NOW, this 31st day of January, 1991, plaintiff's motion for summary judgment is denied. Judgment is entered against the plaintiff and in favor of the defendant property, and the Clerk of Court is directed to close the file.
 
 
 12
 In a document filed in support of its judgment entitled, DISCUSSION, the district court summarized the chronology of this case as follows:
 
 
 13
 * * * * * *
 
 
 14
 Plaintiff filed a motion for summary judgment on which a hearing was held and testimony taken on January 23, 1991. The motion is opposed by Thomas Pennington, the titled owner.
 
 
 15
 The above-quoted segments concern us because, as of January 23, 1991, the record does not support that a summary judgment motion was pending on that date. According to the docket entries, on January 23, 1991 a non-jury trial commenced. The minutes of the forfeiture trial disclose the following:
 
 
 16
 Counsel present. Counsel dispensed with opening statements. The Government calls witnesses. The Government rests its case in chief re: probable cause. The defendant calls witnesses and rests its case in chief. The Government calls rebuttal witnesses and rests. The court takes this matter under advisement. Court adjourned.
 
 
 17
 Nor was the matter conducted in a manner appropriate to such a motion. Further, it is clear that in its legal rationale, the district court did not apply standards traditionally employed to evaluate summary judgment motions but, instead, analyzed whether by its evidence, undisputed and contradicted, the government satisfied its burden of proof established for forfeiture cases on the merits.
 
 
 18
 We assume, therefore, that the court's reference, in its final order and in its discussion, to the matter as having been presented as a summary judgment motion was simply an inadvertent characterization.
 
 
 19
 In any event, our disposition relies upon the uncontested facts in this matter, those regarding the acquisition of the home equity loan. Whether we are reviewing a grant of a summary judgment or a pure legal question within the context of a non-jury trial, our scope of review is plenary. Thus, any confusion surrounding the form of the judgment is not material. We mention it primarily to reference the inconsistency and to explain that we are indeed applying plenary review over the legal question presented by this case: Does the pledging of property as collateral to obtain funds, with the intention of using those funds to purchase narcotics, subject that property to civil forfeiture under 21 U.S.C.A. § 881(a)(7) even though ultimately the loan proceeds were not so used?
 
 III.
 
 20
 The civil drug forfeiture statute, 21 U.S.C.A. § 881 et seq., enacted in 1970 and amended in 1979 and 1984, provides for an action in rem against real property used to facilitate drug activity. In enacting § 881(a)(7) (West Supp.1991) of Title 21 of the United States Code, Congress mandated that
 
 
 21
 (a) The following shall be subject to forfeiture to the United States ...:
 
 
 22
 (a)(7)--All real property ... which is used, or intended to be used ... to commit, or to facilitate the commission of a [designated] violation of this title....
 
 
 23
 21 U.S.C.A. § 881(a)(7) (West Supp.1991) (emphasis added).
 
 
 24
 The complaint for forfeiture in this case alleged that the real property was used or was intended to be used to facilitate violations of the federal controlled substances statute, and therefore subject to forfeiture pursuant to 21 U.S.C.A. § 881(a)(7).[3]
 
 
 25
 Where the government seeks a § 881(a)(7) forfeiture, 21 U.S.C.A. § 881(d) mandates that the procedures outlined in 19 U.S.C.A. § 1615 for customs forfeiture become operational. In relevant part, § 1615 reads:
 
 
 26
 § 1615. Burden of proof in forfeiture proceedings
 
 
 27
 In all suits or actions ... brought for ... forfeiture ... where the property is claimed by any person, the burden of proof shall lie upon such claimant' ... Provided, That probable cause shall be first shown for the institution of such suit or action....
 
 
 28
 Under § 1615 as applied to the drug forfeiture statute, to determine probable cause to initiate a forfeiture proceeding, we examine whether the government has relied upon information " 'adequate and sufficiently reliable to warrant the belief by a reasonable person that' the property was used to further the trafficking of illegal narcotics." United States v. Parcel of Real Property Known as 6109 Grubb Road, 886 F.2d 618, 621 (3d Cir.1989), quoting United States v. One 56-Foot Motor Yacht Named Tahuna, 702 F.2d 1276, 1282 (9th Cir.1983). Once the prosecution has proffered evidence sufficient to warrant belief "that the property in question was intended to be used for purpose of acquiring a controlled substance," see United States v. $55,518.05 in U.S. Currency, 728 F.2d 192, 195 (3d Cir.1984), the burden shifts to the claimant to the property to disprove the allegations. 19 U.S.C.A. § 1615; see also United States v. $250,000 in U.S. Currency, 808 F.2d 895, 897 (1st Cir.1987).
 
 IV.
 
 29
 We turn to the nature of the activity which will render real property subject to civil forfeiture under § 881(a)(7). We note that the federal courts have not employed a uniform test in order to determine the quantity and quality of the acts connected to the property which will subject it to government seizure. Some courts require "a substantial connection" between real property and the underlying crime. See United States v. 1966 Beechcraft Aircraft Model King Air A90 etc., 777 F.2d 947, 953 (4th Cir.1985); United States v. One 1976 Ford F-150 Pick-Up, 769 F.2d 525, 527 (8th Cir.1985); United States v. One 1972 Chevrolet Corvette, 625 F.2d 1026, 1029 (1st Cir.1980). In contrast, the Court of Appeals for the Second Circuit designated its test as one mandating a "sufficient nexus" correlation. See United States v. Premises and Real Property at 4492 South Livonia Rd., 889 F.2d 1258, 1269 (2d Cir.1989).
 
 
 30
 In United States v. One 1977 Lincoln Mark V Coupe, 643 F.2d 154 (3d Cir.), cert. denied sub nom., Whitby v. United States, 454 U.S. 818, 102 S.Ct. 97, 70 L.Ed.2d 88 (1981), we employed a standard of evaluation adopting the word "facilitate" directly from the statute. There police officers observed individuals standing under the open hood of an automobile. One suspect stepped back from the automobile, reached into his left pocket, brought out two packets which contained heroin, and gave those packets to an officer-informant. The officer subsequently observed the suspect remove several other similar packets from the same pocket and place them in the trunk of the car. In finding sufficient evidence to support a finding of probable cause that the automobile was used to "facilitate" the sale of a controlled substance, we asked whether " 'there was a reasonable ground for belief that the use of the automobile made the sale less difficult and allowed it to remain more or less free from obstruction or hindrance.' " One 1977 Lincoln, 643 F.2d at 157, quoting United States v. One 1950 Buick Sedan, 231 F.2d 219, 222 (3d Cir.1956).
 
 
 31
 In subsequent cases district courts in our circuit have utilized this facilitation test in evaluating civil forfeiture matters, yet have varied in their articulations of the word "facilitate."[4] We do not find it necessary today to dissect the differences between the tests utilized by the various courts of appeals or to reconcile the wording employed by the district courts in applying our facilitation test.[5] As well, we need not determine which test best effectuates the intent of the statute[6] since, here, even under the test most rigorous for the government, the government has met its ultimate burden of proof. Money was the most important component for the purchase of drugs by Pennington. He pledged the real property to secure the necessary ready cash. Not only would the property, if put to its intended use, facilitate the drug sale, its value was expected to finance the entire transaction. The facilitation test is thus amply satisfied.
 
 V.
 
 32
 A remaining question involves intent. Specifically, did the district court properly conclude that because the loan proceeds were not ultimately used to buy the marijuana that the connection between the property and the narcotics violation was dissipated. The district court stated:
 
 
 33
 Concerning the "use" requirement of the Act, it is admitted that Pennington applied for a bank loan intending to use the proceeds to purchase marijuana. Before receiving the proceeds, however, the marijuana was purchased by Pennington using other borrowed funds. The loan proceeds were received a few days later and were kept in the property for several weeks before being repaid to the bank. Assuming the property was pledged for the loan, we do not consider these facts to be a "use" of the property that would support a forfeiture. We need not consider whether the other "use(s)" alleged, if proved, would be sufficient to support a civil forfeiture.
 
 
 34
 We conclude that the district court erred as a matter of law.
 
 
 35
 We look first to the plain language of the statute. Section 881(a)(7) states clearly that [a]ll real property ... which is used, or intended to be used ... [in any manner] to facilitate the commission of a [narcotics] violation" is subject to forfeiture. There is no distinction made between actual use or intent to use.
 
 
 36
 Caselaw also supports this lack of distinction between actual use and intention to use. In United States v. $84,000 U.S. Currency, 717 F.2d 1090 (7th Cir.1983), currency which was secreted in airline passengers' boots and pants was seized during a pat down search by law enforcement officers. The claimants argued that they attempted to purchase a controlled substance in Florida and were unsuccessful, and that they were returning home with the cash, and at the time of the seizure, their intent to use the currency to purchase controlled substances had ended so that the monies were no longer subject to the forfeiture statutes. The Court of Appeals for the Seventh Circuit held that currency is forfeitable when it is used, or is intended or attempted to be used, in violation of the federal controlled substances laws. Accordingly, the currency was subject to forfeiture.
 
 
 37
 In United States v. Lots 12, 13, 14 and 15, Keeton Heights Subdivision, 869 F.2d 942 (6th Cir.1989), the court of appeals held that property need not actually have been used to facilitate the commission of a felony if it is intended to be used in any manner for that purpose. "Intent is determinative, under the statute." 869 F.2d at 946, citing United States v. One 1980 Cadillac Eldorado, 705 F.2d 862 (6th Cir.1983).
 
 
 38
 We agree with the Court of Appeals for the Sixth Circuit that intent is a crucial determinant. Here Pennington admitted that he intended to use the home equity loan proceeds, secured by the real property, to buy marijuana and that he took all necessary steps with the savings and loan to secure the money. The only reason he did not use these funds is because they were not readily available to coincide with his trip to Arizona to purchase the marijuana. His aim was specific--his real property was to supply the means for him to purchase illegal narcotics. Thus the connection between the property and the intended activity relating to illegal narcotics trafficking is firmly established. The real property is properly forfeited under § 881(a)(7).
 
 
 39
 Because we have found that the pledging of the property with the intent to finance the drug buy is sufficient, as a matter of law, to subject the property to forfeiture, we need not discuss whether the admitted origination from and receipt of telephone calls at the property involving the drug purchase in Arizona would also justify the government's seizure of RD1, Box 1. We reference it only as further evidence that the property facilitated the drug operation of the claimant.
 
 VI.
 
 40
 For all the reasons cited above, we will reverse the order of the district court and remand this appeal for the district court to enter judgment in favor of the government and against the subject property.
 
 
 
 *
 Honorable Gustave Diamond of the United States District Court for the Western District of Pennsylvania, sitting by designation
 
 
 [1]
 Many of these alleged uses are not part of this appeal, namely (1) that marijuana was stored, purchased and weighed in the kitchen area of the defendant property; (2) that communications and a conspiracy concerning possession and distribution of narcotics occurred on the property; (3) that Pennington used, in part, the proceeds of drug dealing to purchase the property; and (4) that Pennington bartered for installation of a rail fence on the property in exchange for drugs
 
 
 [2]
 Although he told the loan officer that the money would be used to purchase a mobile home, Pennington admitted at trial that he intended to purchase marijuana with the loan proceeds
 
 
 [3]
 In this appeal, we are concerned solely with the forfeiture pursuant to § 881(a)(7). Although the government also charged a violation of § 881(a)(6), (property forfeited if traced from money or things received in exchange for controlled substance), the evidence which the government offered to substantiate the alleged violation of § 881(a)(6) was successfully contradicted at trial by the claimant
 
 
 [4]
 In United States v. One 1981 Datsun, 563 F.Supp. 470 (E.D.Pa.1983), citing One 1977 Lincoln, 643 F.2d at 157, the court concluded that because an automobile allowed a drug dealer to be present at three separate meetings for the purpose of arranging and then consummating a drug sale, there was "a sufficient nexus" between the car and the drug transaction to support application of the forfeiture provision
 One district court has interpreted One 1977 Lincoln and a subsequent case, United States v. $55,518.05 in U.S. Currency, 728 F.2d at 195 (3d Cir.1984) (government bears initial burden to show probable cause that property was intended to be used for the purpose of acquiring a controlled substance), for the proposition that for the government to sustain its burden of proof it must show "probable cause to believe that a substantial connection existed between the property to be forfeited and the criminal activity...." United States v. Premises Known as 2639 Meetinghouse, 633 F.Supp. 979, 986 (E.D.Pa.1986).
 In United States v. Premises Known as 427 Chestnut Street, 731 F.Supp. 183, 187 (E.D.Pa.1990), the court held that the government must establish "some nexus" between the property to be forfeited and the criminal activity defined by the statute, such as use of the property to store drugs and related paraphernalia or the purchase of the premises with drug proceeds.
 
 
 [5]
 Indeed, the distinctions made and their applications often appear to be semantical. For example, although our facilitation test has been characterized as a broad interpretation of the statute, see Sean D. Smith, Note, The Scope of Real Property Forfeiture For Drug Related Crimes Under The Comprehensive Forfeiture Act, 137 U.Pa.L.Rev. 303, 326-27 (1988), practical application of the test suggests that both the "substantial connection" and "sufficient nexus" considerations are incorporated in "facilitate." See Premises Known As 2639 Meetinghouse, 633 F.Supp. at 986 (government must show reasonable ground for belief of "substantial connection" between exchange of controlled substance for proceeds traceable to subject property); see Premises Known As 427 Chestnut St., 731 F.Supp. at 187 (E.D.Pa.199) (government must demonstrate "some nexus" between property and criminal activity)
 Even the distinction between "substantial connection" and "sufficient nexus" has been muddled, i.e., one court found the substantial connection requirement fulfilled if there is a sufficient nexus between the forbidden activity and the property. See United States v. One 1972 Chevrolet Corvette, 625 F.2d 1026, 1029 (1st Cir.1980) (is focus on whether there is "sufficient nexus" between property use and criminal activity consonant with Congressional intent that property is subject to forfeiture if "substantially connected" to drug activity?).
 
 
 [6]
 21 U.S.C.A. § 881(a)(7), the real property forfeiture provision, was enacted as part of the Comprehensive Forfeiture Act of 1984. Concerning the perceived deficiencies in the then-current law, the Senate Committee states as follows:
 The extent of drug-related property subject to civil forfeiture under 21 U.S.C. 881 is also too limited in one respect. Under current law, if a person uses a boat or car to transport narcotics or uses equipment to manufacture dangerous drugs, [the drug dealer's] use of the property renders it subject to civil forfeiture. But if [the drug dealer] uses a secluded barn to store tons of marihuana or uses his house as a manufacturing laboratory for amphetamines, there is no provision to subject [the] real property to civil forfeiture, even though its use was indispensable to the commission of a major drug offense and the prospect of the forfeiture of the property would have been a powerful deterrent.
 Senate Committee on Continuing Appropriations, 1985 Comprehensive Crime Control Act of 1984, S.Rep. No. 225, 98th Cong., 2d Sess. 195, reprinted in 1984 U.S.Code Cong. & Admin.News 3182, 3378.