971 F.2d 974
 61 USLW 2143, 23 Fed.R.Serv.3d 307
 UNITED STATES of America
v.
CONTENTS OF ACCOUNTS NOS. 3034504504 AND 144-07143 AT
MERRILL, LYNCH, PIERCE, FENNER AND SMITH, INC.
Friko Corporation, Claimant,
Friko Corporation, Appellant.
 Nos. 91-5470, 91-5768.
 United States Court of Appeals,
Third Circuit.
 Submitted Under Third Circuit 12(6)
Jan. 31, 1992.
Decided July 22, 1992.
Rehearing Denied Sept. 22, 1992.
 
 Barry A. Spevack, Monico, Pavich & Spevack, Chicago, Ill., for Friko Corp.
 Michael Chertoff, U.S. Atty., Neil R. Gallagher, Asst. U.S. Atty., Office of U.S. Atty., Newark, N.J., for U.S.
 Present: SLOVITER, Chief Judge, MANSMANN and HUTCHINSON, Circuit Judges.
 OPINION OF THE COURT
 HUTCHINSON, Circuit Judge.
 
 
 1
 These in rem forfeiture proceedings involve two accounts opened with Merrill, Lynch, Pierce, Fenner & Smith in the name of Friko Corporation (Friko), a Panamanian corporation. At Docket No. 91-5470 Friko appeals an order of the United States District Court for the District of New Jersey that struck its claim to those accounts. The district court struck Friko's claim after holding Friko lacked standing to contest the seizure. Not only does Friko contend that it had standing, it also contends that the district court lacked jurisdiction to entertain the forfeiture proceeding because the accounts were not located in the same district in which the in rem forfeiture was filed. At Docket No. 91-5768 Friko also appeals from a subsequent order of the district court denying, as untimely, Friko's motion for reargument of the order striking its claim to the res.
 
 
 2
 Preliminarily, after examining the district court's jurisdiction, we hold that court had jurisdiction over the dispute between the government and Friko and that venue was properly laid in New Jersey. We also hold, however, that the district court lacked jurisdiction to determine the government's rights to the res versus the rest of the world. On the merits, we hold that the district court, on the evidence before it, did not err in ruling that Friko is nothing more than a straw man, or alter ego, for Johnny Daccarett (Daccarett), the true owner of the accounts. Thus, the district court was correct in concluding that Friko did not have standing to object to the forfeiture. Accordingly, on Friko's appeal No. 91-5470 we will affirm the orders of the district court striking Friko's claim for lack of standing and its consequent order entering a default judgment against Friko, but vacate its order entering a default judgment in favor of the government as to the res itself.
 
 
 3
 Finally, we have concluded that Friko's motion for reargument is properly treated as a motion for relief under Federal Rule of Civil Procedure 60(b) rather than Rule 59(e). As such, we hold it was timely. Thus, on Friko's appeal at No. 91-5768 we will remand the case to the district court so that it can exercise its discretion to grant or deny that motion.
 
 I.
 
 4
 Following a criminal indictment filed in the United States District Court for the District of New Jersey alleging money laundering against, inter alia, Julio Montes Cardona (Cardona), Daccarett, Friko, and Quasil International Corporation (Quasil), the government filed an amended complaint for civil forfeiture in rem against Friko's accounts 3034504504 (the credit card account) and 144-07143 (the brokerage account) (collectively "the accounts") at Merrill, Lynch, Pierce, Fenner & Smith (the broker) in New York, New York on May 14, 1990 in the United States District Court for the District of New Jersey. A seizure warrant for the arrest of the brokerage account was then served on the broker in the United States District Court for the Southern District of New York. The credit card account had already been arrested.
 
 
 5
 Friko filed an objection to the forfeiture of the seized property on June 7, 1990. Thereafter, it filed a motion to dismiss the amended complaint on numerous grounds including lack of in rem jurisdiction. On August 31, 1990, the government moved to strike Friko's claim on the ground that Friko had no standing to object to the forfeiture because it was just a straw man for the true claimant, its president Johnny Daccarett, who did not have standing because he is a fugitive.
 
 
 6
 In an opinion and judgment entered on April 8, 1991, the district court denied Friko's motion to dismiss and granted the government's motion to strike Friko's claim. The district court held that it had jurisdiction over the forfeiture proceeding because Friko and Daccarett had been indicted in United States v. Cardona, No. 90-69 (D.N.J.), a related criminal case. The district court struck Friko's claim for lack of standing after concluding that Friko, as a straw man for the true claimant, Daccarett, had no standing and held that Daccarett himself was not entitled to challenge the seizure because he was a fugitive. The government then moved for an order that Friko had defaulted by failing to assert any cognizable right in the res. That motion was granted on April 19, 1991. Subsequently, a default judgment which awarded the res to the government was entered on the forfeiture complaint on May 24, 1991.
 
 
 7
 Unaware that a default judgment had been entered awarding the government full ownership of the res, see infra note 10, Friko filed a motion for reargument on the order striking its claim to the res. The motion for reargument was filed the same day the default judgment awarding the res to the government was entered. It was returned to Friko's attorneys because they had failed to set forth a return date for the motion.
 
 
 8
 On May 31, 1991, Friko filed a proper motion for reargument on the order striking its claim. In its renewed motion for reargument, Friko also asked that the April 19, 1991 default order entered due to its failure to assert a cognizable right in the res be vacated. In addition, on the same day, May 31, 1991, Friko filed a timely notice of appeal from the order striking its claim. As stated, we docketed that appeal at No. 91-5470.[1] The government opposed the motion for reargument. On July 31, 1991 the district court denied the motion for reargument as an untimely Rule 59(e) motion for reconsideration, and refused to set aside the default. On September 24, 1991, Friko filed its second notice of appeal, docketed at No. 91-5768, from both the April 8 order and the July 31 denial of reconsideration.
 
 II.
 
 9
 This forfeiture is part of the government's efforts to halt money laundering by drug dealers in the United States. According to the government, after drug dealers in the United States with suppliers in South America collect the cash proceeds of their illicit sales they face the problem of transferring money back to South America to pay the suppliers. Our federal banking laws are structured to minimize the use of our banking system to channel these illegal cash proceeds to South America.
 
 
 10
 Accordingly, any time a financial institution is involved in an all cash transaction that exceeds an amount specified by a banking regulation, it must be reported by the financial institution involved. See 31 U.S.C.A. § 5313 (West 1983). Current regulations require cash transactions exceeding $10,000.00 to be reported. See 31 C.F.R. § 103.22(a)(1) (1991). If the reporting requirement is not observed, criminal penalties are imposed. 31 U.S.C.A. § 5322 (West Supp.1992). It is also illegal to structure transactions intentionally to avoid the financial institution's reporting requirement. Id. § 5324 (West Supp.1992). Thus, systematic cash deposits in an amount less than $10,000.00 that are made for the purpose of avoiding section 5313's bank reporting requirement subjects the depositor to that section's criminal penalties. Purchasing money orders and then depositing the money orders in a bank account in order to avoid the section 5313 reporting requirement also subjects the depositor to section 5324's penalties.
 
 
 11
 Friko was formed in September of 1980. Its principal directors and corporate officers were all members of the Daccarett family. Jorge Daccarett, Friko's Secretary, has signed an authorization that allows Johnny and Delia Daccarett to obligate the company. Friko opened the accounts in question in Panama in October of 1983 and believed them to be located there. In fact, the brokerage account is held in New York, while certain free credit balances are held in the United Kingdom.[2]
 
 
 12
 The indictment charged that Cardona ran a money laundering operation in New Jersey and that Friko, Daccarett and Quasil, a Panamanian company owned by Daccarett, inter alia, participated in that operation. The investigation uncovered evidence that substantial sums passed between the accounts of Quasil and Friko. Quasil's Florida accounts show deposits from the Cardona money laundering operation of 351 money orders of small denominations totaling $224,000.00 over an eight-month period, many of which were sequentially numbered. Moreover, a $41,000.00 check from Friko's brokerage account was used to open a New York savings account by Luis Saad, who also had dealings with the Cardona operation and another Quasil account in Panama. The government states that its investigation has not uncovered any business activities for Friko or Quasil except for a series of transactions in various bank accounts on which they are shown as holders of legal title.
 
 
 13
 Friko "present[s] itself as a money exchanger in Colombia['s] parallel market." Brief of Appellant in No. 91-5470 at 6. In support it presented an affidavit of Mohammad Haris Jafri, an economist formerly with the International Money Fund. Jafri stated that South American businesses frequently hold dollars in American banks as a hedge against the volatility of South American currencies. Saad also filed an affidavit on Friko's behalf. He stated that he worked for his father's textile business and went regularly to New York to buy textiles. Saad says he had no cash to buy the textiles because his money was all tied up in certificates of deposit, when Daccarett, a friend of Saad's father, helped him out by giving him $41,000.00 for the purpose of buying textiles. The $41,000.00 was Saad's initial deposit in his New York account. Saad said he has repaid Daccarett.
 
 
 14
 Friko and Daccarett were named as defendants in the Cardona indictment. While Daccarett himself did not enter an appearance, he signed a corporate resolution that authorized an appearance for Friko as a defendant in the Cardona criminal case. The government subsequently chose to dismiss Friko from the criminal case on October 19, 1990 but continued to proceed on its civil forfeiture action against the accounts Friko claims it owns. At the time the accounts were seized, Friko says they had a balance totaling more than $1,700,000.00.
 
 
 15
 After the district court held that Friko was a straw man for Daccarett and struck its claim, Friko, in support of its motion for reargument, submitted an affidavit from Isidoro Rodriguez (Rodriguez), a member of the Virginia bar as well as Friko's lawyer in Colombia. Rodriguez stated that Daccarett is the "Legal Representative" for two of Colombia's one-hundred largest exporters and that the combined transactions of these two exporters totaled over $9,000,000.00 in the first half of 1990. Rodriguez also swore that Friko was formed to help facilitate these transactions and that Friko's initial capitalization came from the sale of another Daccarett-family-owned business. Finally, he represented that Friko "is capable of presenting documentation to establish its legal and equitable interest in the property seized." Supplemental Appendix in No. 91-5768 at 126.
 
 III.
 
 16
 We have appellate jurisdiction over the district court's final judgment pursuant to 28 U.S.C.A. § 1291 (West Supp.1991).[3] Friko disputes the district court's jurisdiction over the accounts the government seeks forfeiture of. The resolution of this dispute will determine whether the district court had the power to decide if Friko had any claim to the accounts and whether they were forfeited to the government.
 
 IV.
 
 17
 We must first address several threshold questions concerning subject-matter jurisdiction, due process, venue, in rem jurisdiction and service of process. We will consider them in turn before reaching Friko's arguments that it had standing to contest the forfeiture and that its motion for reargument was erroneously denied.
 
 A.
 
 18
 Friko frames its venue argument in terms of due process, arguing that "[a]lthough federal courts have nationwide jurisdiction, due process demands at least some connection to the District."[4] Brief for Appellant in No. 91-5470 at 24 (emphasis in original). Friko says that the Supplemental Rules For Certain Admiralty And Maritime Claims (Supplemental Rule(s)) set forth the minimal requirements for a connection that is sufficient to meet due process standards in proceedings in rem.[5] Supplemental Rule C(2) provides in relevant part:
 
 
 19
 In actions in rem the complaint shall be verified on oath or solemn affirmation. It shall describe with reasonable particularity the property that is the subject of the action and state that it is within the district or will be during the pendency of the action.
 
 
 20
 Supp.R. For Certain Admiralty And Maritime Claims C(2) [hereinafter "Supp.R."] (emphasis added). Friko also relies on Supplemental Rule E(3)(a). It states:
 
 
 21
 Process in rem and of maritime attachment shall be served only within the district.
 
 
 22
 Supp.R. E(3)(a) (emphasis added). Both rules presuppose that the res is located in the district where the action is commenced. Friko, therefore, argues that the District of New Jersey lacked venue over this in rem action for forfeiture because the res was in the Southern District of New York and 18 U.S.C.A. § 981(h) (West Supp.1992), concerning venue in forfeiture cases, is unconstitutional. This question is one of law over which we exercise plenary review. See Air Courier Conf. of Am./Int'l Comm. v. United States Postal Serv., 959 F.2d 1213, 1217 (3d Cir.1992).
 
 Section 981(h) reads:
 
 23
 In addition to the venue provided for in section 1395 of title 28 or any other provision of law, in the case of property of a defendant charged with a violation that is the basis for forfeiture of the property under this section, a proceeding for forfeiture under this section may be brought in the judicial district in which the defendant owning such property is found or in the judicial district in which the criminal prosecution is brought.
 
 
 24
 Id. § 981(h). Here, Friko was indicted as a co-defendant in the Cardona criminal prosecution in the District of New Jersey. The government, therefore, contends that a proceeding to forfeit Friko's bank accounts can be brought in the District of New Jersey under section 981(h).
 
 
 25
 Section 981(h) is recently enacted and we have found only two reported cases that have even mentioned it. See United States v. All Funds On Deposit In Any Account At Certain Fin. Insts. Held In The Names Of Certain Individuals, 767 F.Supp. 36, 39-40 (E.D.N.Y.1991); United States v. Contents of Account Number 11671-8, 763 F.Supp. 53, 54 (S.D.N.Y.1991). Neither deals with the due process question Friko raises and neither undertakes any materially helpful discussion or analysis of section 981(h). They do no more than provide examples of situations in which section 981(h) afforded a district court venue over civil forfeiture actions against a res outside the district when the forfeiture action was related to criminal proceedings brought within the district. See All Funds, 767 F.Supp. at 39-40 (venue over forfeiture proceedings concerning four accounts located in the Southern District of New York properly laid in the Eastern District of New York); Account Number 11671-8, 763 F.Supp. at 54 (venue over proceedings concerning account located in District of Puerto Rico properly laid in the Southern District of New York).
 
 
 26
 Section 981(h) is, however, a veritable clone of 21 U.S.C.A. § 881(j) (West Supp.1992) (forfeiture proceedings related to drug prosecutions).[6] Section 881(j) has been the subject of eight reported cases. Only in one, United States v. 11205 McPherson Lane, 754 F.Supp. 1483, 1484-89 (D.Nev.1991), has a court held that section 881(j) did not give it power to deal with a res located outside the district in which the forfeiture proceeding was brought, and there the court pointed out the problem was not venue but territorial jurisdiction. Cf. United States v. 6960 Miraflores Ave., 932 F.2d 1433, 1435 (11th Cir.1991) (government may prosecute "forfeiture action either in the district where the res is located, in the district of the criminal prosecution, or the district in which the owner is found"), petition for cert. granted sub. nom., Republic Nat'l Bank v. United States, --- U.S. ----, 112 S.Ct. 1159, 117 L.Ed.2d 406 (1992) (certiorari granted on an unrelated issue); United States v. Maull, 855 F.2d 514, 517 (8th Cir.1988) (forfeiture prosecution may be brought either where res is located or criminal prosecution is brought); United States v. 218 Panther St., 745 F.Supp. 118, 119 n. 2 (E.D.N.Y.1990) (noting statute in dicta), aff'd sub. nom. United States v. Eng, 951 F.2d 461 (2d Cir.1991); United States v. Section 28, Block 1, Lot 48.221, 131 F.R.D. 27, 28 (D.R.I.1990) (claimant's motion for transfer of forfeiture proceedings to Southern District of New York granted when indictment had been transferred there and res was there); United States v. Parcel I, 731 F.Supp. 1348, 1351 (S.D.Ill.1990) (forfeiture proper when brought in same district as related criminal proceeding); United States v. 5708 Beacon Dr., 712 F.Supp. 525, 527 (S.D.Miss.1988) (same); United States v. 2050 Brickwell Ave., 681 F.Supp. 309, 311 (E.D.N.C.1988) (same).
 
 
 27
 These cases persuade us to reject Friko's argument that section 981(h)'s limited grant of venue over civil actions for forfeiture of a res to district courts that do not have the res within their boundaries violates due process. By limiting venue in civil forfeiture proceedings to those districts that have venue over a related criminal proceeding, section 981(h) prevents the government from seeking civil forfeiture in a court so inconvenient for the defendant or the claimant that either of them is deprived of the fundamental fairness that is at the core of due process. Section 981(h) assures that the criminal defendant whose alleged misconduct is the basis on which the government asserts its right to forfeiture will already be present or subject to personal jurisdiction in the forfeiture venue because it is only there that the related criminal action can proceed (other than where the res is or its owner is found). Since venue in a criminal proceeding is constitutionally restricted to "the State where the said Crimes shall have been committed," U.S. Const. art. III, § 2, cl. 3, civil forfeiture venue under section 981(h) is similarly restricted to a district in the state where the related crime was committed. We therefore hold that the district court's assumption of venue under section 981(h) does not infringe Friko's constitutional right to due process.
 
 B.
 
 28
 Friko's argument also goes to the absence of in rem (territorial) jurisdiction over the res, as well as the court's lack of power to hear the government's cause because of a lack of venue. Friko contends that the district court was without territorial jurisdiction because the res was not located in the District of New Jersey. The district court ruled that territorial jurisdiction existed in the District of New Jersey under section 981(h). Friko's challenge to the district court's assertion of territorial jurisdiction is a question of law over which we exercise plenary review. See Bumberger v. Insurance Co. of N. Am., 952 F.2d 764, 766 (3d Cir.1991).
 
 
 29
 The government asserts "[t]here is no doubt that the territorial jurisdiction of the United States District Court for the District of New Jersey in a forfeiture proceeding includes New York City. Its jurisdiction is limited only by the nation's borders and the venue provisions. Congress created nationwide jurisdiction when it passed 18 U.S.C. § 981(h)...." Brief for Appellee in No. 90-5470 at 27-28 (citation omitted); see 18 U.S.C.A. § 981(a)(1)(A) (West Supp.1992).
 
 
 30
 Friko's jurisdictional argument is not controlled by section 981(h)'s validity as a venue statute. Venue, though dependent upon jurisdiction, is distinct from it.
 
 
 31
 Venue does not refer to jurisdiction at all. "Jurisdiction" of the court means the inherent power to decide a case, whereas "venue" designates the particular [district] in which a court with jurisdiction may hear and determine the case.
 
 
 32
 Black's Law Dictionary 1396 (5th ed. 1981). See generally 4 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 1070 (2d ed. 1984) (discussing in rem jurisdiction). The government's premise, that section 981(h) automatically expanded the district court's in rem jurisdiction to the same extent as its venue, must be examined.
 
 
 33
 When subject-matter jurisdiction and venue are present but the res that is said to afford a district court in rem jurisdiction is located outside the district in which proceedings against the res are brought, service of process must be available if a district court is to exercise jurisdiction over the res. See The Rio Grande, 90 U.S. (23 Wall.) 458, 463, 23 L.Ed. 158 (1874). In this case, the res is in New York, not New Jersey, and the Supplemental Rules on which service of process depends provide for service only within the district in which the court seeking to exercise power over a res is located. See Supp.R. E(3).
 
 
 34
 The Federal Rules of Civil Procedure allow process to "be served anywhere within the territorial limits of the state in which the district court is [located]," unless a federal statute authorizes otherwise, subject to an exception not relevant here. Fed.R.Civ.P. 4(f). They also allow service under any statute of the state within which the district court sits. Id. 4(e). The government has made no contention, however, that any New Jersey statute applies in this case. Thus, without federal statutory authorization, the district court cannot serve process on any res located outside of New Jersey. For that authorization, the government turns again to section 981(h).
 
 
 35
 As we have explained, section 981(h) gives venue to a district court that does not have the res within its boundaries when a related criminal prosecution is brought within the district. It is silent with respect to service of process, as is 21 U.S.C.A. § 881(j), the model for section 981(h). Despite section 981(h)'s silence on the subject of service of process, the government says that it authorizes extra-territorial jurisdiction as well as venue over a res outside a district's boundaries. In order to do so, the government seeks to imply a provision for a nationwide service of process into section 981(h). The government concedes that section 981(h) has no legislative history but asks us to look to its first born twin, section 881(j). Curiously, the government also concedes the absence of relevant legislative history for section 881(j) and instead finally asks us to look to the legislative history of 21 U.S.C.A. § 853 (West Supp.1992).
 
 
 36
 There, in the history of section 853, the government discovers part of a Senate Committee report that it says supports its argument that section 981(h) implicitly provides territorial jurisdiction over civil forfeiture proceedings in rem beyond the district in which the res is located. The history the government refers to reads:
 
 
 37
 A third major problem with current forfeiture statutes arises from the need to pursue virtually all forfeitures of drug-related property through civil proceedings. Until recently, civil forfeiture proceedings under title 21 were not perceived as particularly problematic. Indeed, in certain respects, civil forfeiture has advantages over criminal forfeiture. As noted above, property is generally seized early on in a civil forfeiture case, thus limiting the problem of transfers and concealment of assets. Also, the government's burden of proof is lower in these cases. However, as drug trafficking has increased and the government has stepped up its enforcement and forfeiture efforts, the backlog of civil forfeiture cases in some parts of the country has become unmanageable. A way of relieving this problem would be to allow Federal prosecutors, in appropriate circumstances, to pursue criminal, rather than civil, forfeitures in drug cases. The problem with civil forfeiture is that even if the same facts that are at issue in a criminal trial are also dispositive of the forfeiture issue, it is still necessary for the government, in addition to the criminal case, to file a separate civil suit. And where the property of a defendant, or defendants, in the criminal case is located in more than one judicial district, a separate civil forfeiture suit must be filed in each of these districts.
 
 
 38
 A more efficient method of obtaining the forfeiture of assets of drug defendants would be to permit prosecutors the option of pursuing a criminal forfeiture in which the forfeiture action can be consolidated with the prosecution of the offense giving rise to forfeiture. In cases where this alternative could be pursued, valuable judicial and law enforcement resources could be saved.
 
 
 39
 S.Rep. No. 225, 98th Cong., 2d Sess. 196-97, reprinted in 1984 U.S.C.C.A.N. 3182, 3379-80.
 
 
 40
 The Supreme Court of the United States appears increasingly reluctant to rely on legislative history even more on point than that which the government cites here. See Stephen Breyer, On the Uses of Legislative History in Interpreting Statutes, 65 S.Cal.L.Rev. 845, 846 (1992). It also seems to be especially reluctant to imply provisions that are ordinarily expressly stated into statutes that do not mention them. See, e.g., Suter v. Artist M., --- U.S. ----, 112 S.Ct. 1360, 118 L.Ed.2d 1 (1992). Here, the only legislative history the government has supplied comes from a different statute and it is easily and naturally read as relying on an alternate procedure to meet the problem that implication of a service of process provision into section 981(h) would solve. The statute is silent. The government, has unlike Sherlock Holmes, failed to see any significance in a dog's failure to bark. See Sir Arthur Conan Doyle, Silver Blaze, reprinted in 1 The Complete Sherlock Holmes 383 (Doubleday & Co. 1930).
 
 
 41
 Section 853 deals with criminal forfeitures. See 21 U.S.C.A. § 853. Our case is one for civil forfeiture. See 18 U.S.C.A. § 981. On its face, this excerpt from the legislative history of section 853 that the government relies on indicates that Congress recognized a problem in asserting extra-territorial jurisdiction over in rem civil forfeitures but nevertheless decided not to extend service of civil process beyond the district in which the res is found, choosing instead to deal with the problem through the alternate procedure of criminal forfeiture. The legislative history the government cites does not support its argument with respect to extra-territorial in rem jurisdiction over civil forfeitures.
 
 
 42
 In any event, we think the teaching of the Supreme Court precludes us from implying a provision for extra-territorial service of process into section 981(h). It has stated:
 
 
 43
 It would appear that Congress knows how to authorize nationwide service of process when it wants to provide for it. That Congress has failed to do so[ ] argues forcefully that such authorization was not its intention.
 
 
 44
 Omni Capital, Int'l v. Rudolf Wolff & Co., 484 U.S. 97, 106, 108 S.Ct. 404, 411, 98 L.Ed.2d 415 (1987). Omni Capital held that a provision for nationwide service of process could not be implied into Section 22 of the Commodity Exchange Act. Id. at 107-08, 108 S.Ct. at 410-11.
 
 
 45
 We recognize that in Omni the Court was influenced by the fact that other sections of the Commodity Exchange Act did authorize nationwide service of process. Id. at 104-08, 108 S.Ct. at 409-12. Thus, Omni Capital may be distinguishable on its facts since the civil forfeiture laws contain no sections that provide explicitly for nationwide service of process. We do not think this distinction is controlling. In many other contexts, the utility of a nationwide service of process provision has not been lost on Congress. Aside from the Commodity Exchange Act, Congress has expressly provided for nationwide service of process in the civil Racketeer Influenced and Corrupt Organizations Act, see 18 U.S.C.A. § 1965(b) (West 1984), the Securities Act of 1933, see 15 U.S.C.A. § 77v(a) (West Supp.1992), the Securities Exchange Act of 1934, 15 U.S.C.A. § 78aa (West Supp.1992), and the Employee Retirement Income Security Act, see 29 U.S.C.A. § 1132(e)(2) (West 1985). See 11205 McPherson Lane, 754 F.Supp. at 1488; see also Lea Brilmayer & Charles Norchi, Federal Extraterritoriality and Fifth Amendment Due Process, 105 Harv.L.Rev. 1217, 1220 n. 14 (1992) (noting nationwide service of process provided for in Arbitration Act, 9 U.S.C.A. § 9 (West 1970) and Sherman Act, 15 U.S.C.A. § 5 (West 1973)); Howard M. Erichson, Note, Nationwide Personal Jurisdiction in All Federal Question Cases: A New Rule 4, 64 N.Y.U.L.Rev. 1117, 1123 n. 30 (1989) (listing another twelve nationwide statutes providing for nationwide service of process). In the absence of clear evidence in the legislative history that Congress intended to allow nationwide service of process when it enacted section 981(h), we do not think we can imply authorization for nationwide service from section 981(h)'s liberalized rule on venue.
 
 
 46
 We might be more inclined to imply into section 981(h) a provision for nationwide service of process if, without the extended venue it provides for, civil forfeitures would lose all practical effect, but that is not the case. Without section 981(h), "[a] civil proceeding for the forfeiture of property may be prosecuted in any district where such property is found," 28 U.S.C.A. § 1395(b) (West 1976). Absent section 981(h), the District of New Jersey would be an improper venue for civil forfeiture of a res even as to the defendants in the related criminal action. Again, we remind the reader that Section 981(h)'s grant of venue to a district court in which a related criminal proceeding has been brought permits the District Court of New Jersey to adjudicate any rights the criminal defendants subject to its jurisdiction may have in a res located in New York, or elsewhere, without regard to service of process. See 18 U.S.C.A. § 981(h). Whenever a criminal case is pending in the district where the related civil forfeiture is brought pursuant to section 981(h), a criminal defendant who has a claim to the res will usually be within the district court's in personam jurisdiction. Thus, section 981(h) does give the district courts expanded power to resolve a criminal defendant's rights in a related res even though service cannot be effected because the property is outside the court's territorial jurisdiction. See 11205 McPherson Lane, 754 F.Supp. at 1484.
 
 
 47
 We realize that our result requires the government to file a second civil forfeiture action in the district court where the res is found if it wishes to affect any rights persons who are not subject to the territorial jurisdiction of the district court in which the related criminal prosecution is pending may have in a related res. Having already defeated a criminal defendant who claims the res, this second filing is not likely to be necessary unless a lienholder or an innocent owner not present in the district where the criminal proceeding is pending files a claim.
 
 C.
 
 48
 Unfortunately, our conclusion that section 981(h) does not allow extra-territorial service of process does not end our inquiry into the district court's power to adjudicate Friko's claim to ownership of the accounts that are the res. We must still consider whether the district court has otherwise obtained personal jurisdiction over Friko that would enable it to adjudicate Friko's rights in a res located outside the court's territorial jurisdiction. See Mitchell v. Maurer, 293 U.S. 237, 244, 55 S.Ct. 162, 165, 79 L.Ed. 338 (1934). Our review of this issue also is plenary. See Bumberger, 952 F.2d at 766.
 
 
 49
 The record before us does not show any contacts between the District of New Jersey and Friko beyond Friko's connection with the Cardona criminal prosecution and this case. However, in both the criminal prosecution and civil forfeiture proceeding, Friko waived any objection it may have had to the in personam jurisdiction of the District Court of New Jersey. Although the criminal summons issued against Friko could not properly be served on Friko in Panama, see Fed.R.Crim.P. 4(b) ("the summons may be served at any place within the jurisdiction of the United States"), Friko appeared in the Cardona prosecution pursuant to a corporate resolution signed by Daccarett (though Daccarett himself did not appear). Thus, Friko's submission to the District Court of New Jersey's jurisdiction was voluntary.
 
 
 50
 Already litigating the criminal prosecution in the District Court of New Jersey, Friko voluntarily submitted itself to the in personam jurisdiction of the District Court of New Jersey for purposes of the civil forfeiture proceeding. Even assuming that Friko's appearance in the criminal action did not waive any in personam objection to the district court's jurisdiction in the civil forfeiture action, when Friko filed its claim of ownership to the res that is the subject of this forfeiture proceeding without objecting to the district court's in personam jurisdiction as well as its in rem jurisdiction, it waived its objection to the district court's inability to effect service of process beyond the court's territorial boundaries. See Gottlieb v. Sandia American Corp., 452 F.2d 510, 515 (3d Cir.), cert. denied, 404 U.S. 938, 92 S.Ct. 274, 30 L.Ed.2d 250 (1971); see also 13 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 3522, at 78 (2d ed. 1984) ("Jurisdiction over the person is a waivable defect, which must be asserted early in the action by the party who would take advantage of it."); cf. Fed.R.Civ.P. 12(h)(1) (describing steps to be taken to preserve defense of lack of in personam jurisdiction). Accordingly, we hold the district court had power to adjudicate the right to the accounts as between Friko and the government.
 
 
 51
 Because the district court lacked in rem jurisdiction, it did not, however, have the power to enter an adjudication determining that the government's right to the res was superior to all potential claimants. Such a determination of title in the res paramount to the whole world is precisely the effect of the district court's May 24, 1991, order entering a default judgment in favor of the government on the forfeiture complaint. Therefore, that order must be vacated.
 
 V.
 
 52
 Since the district court did have in personam jurisdiction over Friko, and thus could adjudicate ownership of the account as between Friko and the government, we are led at last to Friko's arguments on standing, the fugitive disentitlement doctrine and the district court's denial of its request for reargument.
 
 A.
 
 53
 The district court held that Friko qua Friko lacked standing to challenge the forfeiture because it was merely a shell for Daccarett, a creature, as it were, without existence apart from the creator whose identity it masked. Friko's standing to contest the forfeiture is a question of law over which we exercise plenary review. See United States v. 5000 Palmetto Drive, 928 F.2d 373, 375 (11th Cir.1991). Nevertheless, the district court's findings on the facts that underlie its legal conclusion as to standing cannot be set aside unless they are clearly erroneous. See Fed.R.Civ.P. 52(a); United States v. One 1945 Douglas C-54 (DC-4) Aircraft, 647 F.2d 864, 866 (8th Cir.1981), cert. denied, 454 U.S. 1143, 102 S.Ct. 1002, 71 L.Ed.2d 294 (1982).
 
 
 54
 In forfeiture, as elsewhere, we must distinguish between standing conferred by statute and the standing requirements of Article III to the Constitution. Article III standing requires the claimant to show an interest in the property sufficient to create a "case or controversy," while statutory standing requires claimants to comply with certain procedures. See United States v. 4492 S. Livonia Rd., 889 F.2d 1258, 1262 (2d Cir.1989). Friko maintains that it has fulfilled both the statutory and constitutional prerequisites for standing. It again relies on the Supplemental Rules and contends they provide the only statutory prerequisite for standing is the filing of a claim.[7] If so, when Friko filed its claim to obtain standing, it has complied with the only formality required.[8] Friko goes on to assert that it also has Article III standing because it holds legal title to the accounts.
 
 
 55
 The government does not dispute Friko's statutory standing under Supplemental Rule C(6). Thus, we are left with the question whether Friko had Article III standing.
 
 
 56
 The government concedes Friko's legal title but then questions its legal existence as an entity apart from Daccarett, as if Daccarett, masked and cloaked in the garments of Friko, had stolen, incognito, onto our shores. According to the government, it is Daccarett's standing that is in question, and the government contends that he has none because he is a fugitive whose access to court is precluded by the fugitive disentitlement doctrine.
 
 
 57
 Article III standing is commonly associated with an inquiry into injury-in-fact, causation, redressability and other prudential factors, see, e.g., Warth v. Seldin, 422 U.S. 490, 498-502, 95 S.Ct. 2197, 2204-07, 45 L.Ed.2d 343 (1975), but the inquiry is more focused in forfeiture cases. Courts generally do not deny standing to a claimant who is either the colorable owner of the res or who has any colorable possessory interest in it. See United States v. $321,470.00 in United States Currency, 874 F.2d 298, 303-04 (5th Cir.1989) (ownership or possessory interest sufficient); United States v. $122,043.00 in United States Currency, 792 F.2d 1470, 1473 (9th Cir.1986) (possession sufficient); see also Smith, supra at 9-57 & n. 10.1 (discussing Article III standing of claimants). But see United States v. $38,570.00 in United States Currency, 950 F.2d 1108, 1112-13 (5th Cir.1992) ("[T]he claimant must come forth with some evidence of his ownership interest in order to establish standing to contest a forfeiture [in a forfeiture under section 881(a) ].") (emphasis omitted). We see little analytic difference between Warth 's approach and the owner-possessor approach in forfeiture cases. An owner or possessor of property that has been seized necessarily suffers an injury that can be redressed, at least in part, by return of the seized property.
 
 B.
 
 58
 Though it is undisputed that Friko had legal title to the seized account, "courts have uniformly rejected standing claims put forward by nominal or straw owners. Thus, even possession of legal title to the res may be insufficient to establish standing to contest the forfeiture." Smith, supra at p 9.04, at 9-58.6. Case law is in accord with the statement in Smith. In United States v. One 1981 Datsun 280 ZX, 563 F.Supp. 470 (E.D.Pa.1983), the court disregarded a car's legal title and denied a father standing because it was his son who stood "to suffer from the Datsun's forfeiture." Id. at 475. The court relied on evidence that the car was referred to as the son's, that the son frequently drove the car but the father did not, that the car was "turbocharged and capable of great speed" but the father was 72 years old and suffered from a heart condition and that the father did not pay for the car. Id. Thus, though the car was kept at the father's house and the father held legal title to it, the district court held the father did not have standing to contest the forfeiture because the son exercised dominion and control over the car. Id. at 476.
 
 
 59
 In One 1981 Datsun 280 ZX, the court relied on United States v. One 1945 Douglas C-54 (DC-4) Aircraft, 604 F.2d 27 (8th Cir.1979) (1945 Douglas I ), appeal after remand, 647 F.2d 864 (8th Cir.1981) (1945 Douglas II), cert. denied, 454 U.S. 1143, 102 S.Ct. 1002, 71 L.Ed.2d 294 (1982). There, the district court initially ordered forfeiture of an aircraft to the government. 1945 Douglas I, 604 F.2d at 27. An intervenor who held legal title to the aircraft appealed. The government contested this intervenor's standing in the district court but that court did not decide the standing issue. The court of appeals then refused to reach the merits, holding that the standing question should be examined by the district court in the first instance. Id. at 29. Although the intervenor had tendered the money to purchase the aircraft, the court of appeals noted that an individual named Albert Kammerer (Kammerer) had actually provided the funds. The record in the district court contained evidence tending to show that, on Kammerer's demand, the intervenor gave him a blank bill of sale for the aircraft. Id. It also showed that Kammerer considered himself the owner of the aircraft. 1945 Douglas II, 647 F.2d at 866.
 
 
 60
 On remand, the district court held that Kammerer was the true "owner" of the res. Id. The court of appeals then affirmed on the merits because "[t]he evidence is consistent with Kammerer's dominion and control," id. at 867, and therefore the district court's conclusion was not clearly erroneous, id. at 866; see also United States v. 526 Liscum Dr., 866 F.2d 213, 217 (6th Cir.1988) ("[P]ossession of bare legal title by one who does not exercise dominion or control over property may be insufficient to establish standing to challenge a forfeiture.") (citing United States v. 900 Rio Vista Blvd., 803 F.2d 625, 630 (11th Cir.1986) (emphasizing dominion and control in determining standing in a forfeiture case)).
 
 
 61
 In this case, the district court was faced with a subtly different issue. The government not only argued that Daccarett actually exercised dominion and control over the money in Friko's accounts, it also argued that Daccarett was, for all intents and purposes, Friko. That distinction does not change our analysis.
 
 
 62
 Once the government made out a prima facie case, Friko had the burden of establishing its independent power to control the accounts. See $32,470.00 in United States Currency, 874 F.2d at 302. The government's evidence persuaded the district court that the New York accounts in Friko's name were linked to money laundering. It noted that Friko's directors were all members of Daccarett's family and that it was Daccarett himself who had authorized Friko to file its claim while he remained in Colombia, safe from prosecution. This evidence was enough to meet the government's initial burden and shift to Friko the burden of coming forward with some evidence to show that it had independent existence and could exercise dominion and control over the account independent of Daccarett. See 526 Liscum Dr., 866 F.2d at 217.
 
 
 63
 Friko's efforts to rebut the government's evidence that Daccarett, not it, actually owned and controlled the accounts were feeble. It relied in large part on Jafri's affidavit describing the parallel market for dollars in Colombia and his assertion that Colombian businessmen customarily hold dollars in United States banks. Jafri's affidavit tells us nothing about Friko's identity vis-a-vis Daccarett; it only describes the practice of Colombian businessmen in transactions exchanging foreign currencies for dollars. Friko also offered the affidavit of accountant H. Charles Hess (Hess), to rebut the government's evidence on Friko's lack of existence apart from Daccarett. Hess merely attested to Friko's incorporation and the opening of the accounts in question. His affidavit said nothing about Friko or Daccarett's operations in the business world. Saad's affidavit, the final piece of evidence Friko submitted before entry of the order striking its claim, asserts only that Daccarett was in the textile business. Saad says nothing about Friko's business. Friko's documentary evidence verifies its formation as a corporation, its power to open the seized accounts and to litigate this claim, but it does not tend to show that Friko itself conducts any kind of trade or business beyond holding legal title to various accounts, nor to establish Friko's existence independent of Daccarett.
 
 
 64
 If Friko had an independent existence, it should have presented evidence of legitimate business dealings in its own right. For example, if Friko were engaged in exchanging pesos for dollars in the parallel market, it should have been able to produce evidence of transactions with currency traders other than those the record shows as linked to the laundering of drug proceeds. Under the circumstances, the district court's finding that Friko was a straw owner of accounts owned and controlled by Daccarett was not clearly erroneous. Therefore, it did not err in entering the order of April 8, 1991, striking Friko's claim for lack of standing to contest the seizure.[9] Since that order was a final determination of Friko's rights in the res, Friko has forfeited to the government whatever rights it may have had in the accounts unless the district court erred in its order denying Friko's motion for reargument. That question is the subject of Friko's appeal at our Docket No. 91-5768, to which we now turn.
 
 VI.
 
 65
 To decide Friko's appeal at No. 91-5768, we again confront a threshold problem: the district court's power to adjudicate the motion for reargument. To answer that question we must determine whether the district court correctly treated Friko's motion for reargument as a Rule 59(e) motion for reconsideration of a final order. If so, it would be untimely under Rule 59(e) because it was filed over a month after the April 8 order. Friko contends that the district court erred in treating its motion for reargument as a Federal Rule of Civil Procedure 59(e) motion instead of a motion brought under either Federal Rule of Civil Procedure 55(c) or Federal Rule of Civil Procedure 60(b). If brought under Rule 55(c) or Rule 60(b), Friko's motion for reargument was timely and the district court should have exercised the discretion it has to decide whether to review the merits of Friko's motion. Friko argues its motion for reargument falls within the aegis of Rule 55(c) or 60(b) rather than 59(e) because it sought to submit new evidence on the standing issue and Rule 59(e) does not cover situations where a party seeks consideration of new evidence.
 
 
 66
 Unless we first determine the nature of the May 31 motion, we cannot decide how it was affected by the filing of the notice of appeal on the same day. Since this issue goes to the jurisdiction of the district court, our review is plenary. See Bumberger, 952 F.2d at 766-68.
 
 
 67
 In its May 31 motion for reargument, Friko cited only Rules 60(b) and 55(c). It asked the district court to vacate its final judgment that the res was forfeited to the government and allow the presentation of additional evidence set out in Rodriguez's affidavit. It said the district court should grant this relief because of the exceptional circumstances of the case, the large sum that it would lose if forfeiture were granted. It contends that Rodriguez's affidavit is new evidence and shows that Friko did have an independent existence as a closely held family business and was not a mere mask for Daccarett and that the delay in gathering this additional evidence was occasioned by problems in communicating with Friko's Spanish-speaking staff in Colombia.
 
 
 68
 While Friko sometimes referred to its motion as one for reconsideration (one more likely to fall under Rule 59(e)), it expressly relied on Rodriguez's affidavit as a reason why the judgment should be vacated. The character of a motion is determined by its function, not its title. See, e.g., Keith v. Truck Stops Corp. of Am., 909 F.2d 743, 746 (3d Cir.1990); Venen v. Sweet, 758 F.2d 117, 122 (3d Cir.1985). The facts related in Rodriguez's affidavit indicate to us that Friko's motion was a Rule 60(b) motion. Rule 59(e) does not permit a party to present additional evidence as a basis for relief.[10] In addition, the district court had already entered a default judgment that the res was forfeited to the government before Friko filed its motion for reargument.[11] Even though Friko says it did not know of the entry of the default judgment at the time it filed the motion for reargument, we think the district court should have treated it as a Rule 60(b) motion because only Rule 60(b) allows a party to obtain relief from a default judgment. See Fed.R.Civ.P. 55(c) ("For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b).") (emphasis added). We hold that Friko's motion is a Rule 60(b) motion and therefore the district court erred in treating it as untimely under Rule 59(e).
 
 
 69
 Motions under Rule 60(b) "shall be made within a reasonable time, and for reasons (1)(2) and (3) not more than one year after the judgment, order, or proceeding was entered or taken." Fed.R.Civ.P. 60(b); see Hancock Indus. v. Schaeffer, 811 F.2d 225, 239 (3d Cir.1987). Friko's motion was made 53 days after the April 8 order. It was timely. The government argues, however, that Friko's notice of appeal at No. 91-5740, filed the same day as the motion for reargument, divested the district court of power to hear any motion other than a Rule 59(e) motion and therefore Friko's appeal at No. 91-5768 must be dismissed for lack of appellate jurisdiction since it was filed before the district court had ruled on it. The filing of a notice of appeal does not divest a district court of jurisdiction to entertain a Rule 60(b) motion. See Main Line Fed. Savs. & Loan Assoc. v. Tri-Kell, Inc., 721 F.2d 904, 906 (3d Cir.1983). The district court's failure to rule on the motion before an appeal is filed or thereafter either to deny the motion or signify its intent to grant it leaves nothing for a court of appeals to review with respect to the merits of the motion. Thus, the district court retained the power to deny it, see Venen, 758 F.2d at 123, or to notify Friko that it would, if given the power, grant the motion. In the latter case, Friko could have asked this Court to remand the case to the district court for the purpose of considering the motion, see Main Line, 721 F.2d at 906; see also Hancock Indus., 811 F.2d at 239-40 (discussing Venen and Main Line ). Because the district court incorrectly decided Friko's motion for reargument was an untimely Rule 59(e) motion, it neither denied Friko's motion nor signalled its intention to grant it. Friko's Rule 60(b) motion for reargument is thus still pending in the district court. We will therefore remand the case to the district court that it may exercise its discretion to either grant or deny Friko's motion for reargument.[12]
 
 VII.
 
 70
 In summary, on the appeal at Docket No. 91-5740, we hold that the district court had in personam jurisdiction over the dispute between Friko and the government and that venue was properly laid in the United States District Court for the District of New Jersey. We also hold that, on the record before it, when it entered its order striking Friko's claim, the district court did not err in deciding Friko had no standing to contest the forfeiture because it was a nominal party. In that appeal we will affirm the order of the district court striking Friko's claim and the order entering a default against Friko but, since the district court lacked in rem jurisdiction, we will vacate the May 24, 1991 order entering a default judgment in favor of the government. On the appeal docketed at No. 91-5768, we will, remand the case to the district court so that it can exercise the discretion it has on Friko's Rule 60(b) motion to reconsider its judgment against Friko in light of the additional evidence Friko claims it could not have assembled before the district court granted the government's motion to strike Friko's claim.
 
 
 
 [1]
 Even though the notice of appeal in No. 91-5470 was filed at the same time the motion for reargument was filed, we have appellate jurisdiction over that appeal. If the district court correctly framed the motion for reargument of the April 8 order as a motion made under Federal Rule of Civil Procedure 59(e), that motion was untimely, void and of no effect on the simultaneously filed notice of appeal in No. 91-5470. See Fed.R.App.P. 4(a)(4); In re Bankers Trust Co., 752 F.2d 874, 880 n. 7 (3d Cir.1984). If, on the other hand, the motion for reargument is a Rule 60(b) motion, our appellate jurisdiction is equally unaffected. Rule 60 motions do not affect pending notices of appeal. See Fed.R.App. 4(a)(4); Bankers Trust Co., 752 F.2d at 880 n. 7. We consider this issue infra, Part VI, at 987-88
 
 
 [2]
 The parties do not tell us how these free credit balances arose, the nature of the rights they evidence or the persons entitled to those rights. In any event, the "free credit balances," like the accounts, are not located in New Jersey. If they are located in the United Kingdom, we leave to the district court any question concerning its subject matter jurisdiction over them. The district court's subject matter jurisdiction over the accounts themselves is dealt with in footnote 4, infra
 
 
 [3]
 Both parties cite McKay v. Heyison, 614 F.2d 899, 903 (3d Cir.1980) for the proposition that an order striking a claim is final and appealable as of right. McKay stands for the proposition that the denial of a motion to intervene as of right is final and appealable. Id. Thus, both parties liken the claim procedure in forfeiture to intervention. We accept this analogy since the government proceeds against the res in a forfeiture proceeding and any claimants to that res assert their claims by intervening in the action. See David B. Smith, Defense and Prosecution of Forfeiture Cases, p 9.04, at 9-58.1 to 9-58.2 (1985 & Supp.1991)
 
 
 [4]
 Friko's argument appears, at times, to go to the district court's subject-matter jurisdiction as well as to territorial jurisdiction. To the extent that it goes to subject-matter jurisdiction, we summarily reject it. Congress has given the district courts nationwide subject-matter jurisdiction over civil forfeiture cases like this. See, e.g., 28 U.S.C.A. § 1345 (West 1976) (district courts have jurisdiction over civil suits commenced by United States unless otherwise noted); 28 U.S.C.A. § 1355 (West Supp.1992) (district courts have jurisdiction over any forfeiture under an Act of Congress)
 
 
 [5]
 The admiralty and maritime rules provide "[t]hese rules also apply to the procedure in statutory condemnation proceedings analogous to maritime actions in rem, whether within the admiralty and maritime jurisdiction or not." Supp.R. For Certain Admiralty And Maritime Claims A
 
 
 [6]
 Compare 18 U.S.C.A. § 981(h), supra at 979, with 21 U.S.C.A. § 881(j):
 In addition to the venue provided for in section 1395 of Title 28 or any other provision of law, in the case of property of a defendant charged with a violation that is the basis for the forfeiture of the property under this section, a proceeding for forfeiture under this section may be brought in the judicial district in which the defendant owning such property is found of in the judicial district in which the criminal prosecution is brought.
 
 
 [7]
 Supplemental Rule C(6) requires that "[t]he claimant of property that is the subject of an action in rem shall file a claim." Supp.R. C(6)
 
 
 [8]
 Even though this is not an admiralty or maritime claim, the Supplemental Rules apply to this action because the forfeiture statutes provide an action analogous to a maritime action in rem. See supra note 4
 
 
 [9]
 Once the district court determined Friko was a straw man for Daccarett, it applied the fugitive disentitlement doctrine since Daccarett had not appeared for his criminal proceeding. The district court declared he was a fugitive who could not challenge the forfeiture. On appeal, the parties continue to dispute the application of the fugitive disentitlement doctrine in the forfeiture context
 We do not need to reach this question because Daccarett has not filed a claim pursuant to Supplemental Rule C(6) and he therefore lacks statutory standing. However, even if we were presented with the issue, we believe the holding of the United States Court of Appeals for the Second Circuit that fugitive disentitlement does apply in forfeiture proceedings is persuasive. See Eng, 951 F.2d at 466-67.
 
 
 [10]
 Rule 60(b) reads, in pertinent part:
 On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: ... (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b) ... or (6) any other reason justifying relief from the operation of the judgment.
 Fed.R.Civ.P. 60(b). Rule 59(e) provides that "[a] motion to alter or amend the judgment shall be served not later than 10 days after entry of the judgment." Fed.R.Civ.P. 59(e).
 
 
 [11]
 Friko says he never received notice of the government's default motion or of entry of default. It thus assumed a default judgment had not yet been entered since Federal Rule of Civil Procedure 55(b)(2) requires notice of default motions to all parties who have appeared at least three days before a hearing on the motion
 
 
 [12]
 The government argues on the merits that the evidence Friko wants to present is not newly discovered, merely newly presented. We do not reach that question and can express no view on whether the motion should be granted nor any view as to whether the motion meets the requirements of any of the subsections of Rule 60(b)