Lopez, J.
This case comes before the court on a motion to dismiss filed by the defendant pursuant to Mass.R.Civ.P. 12(b)(6).[1] The Commonwealth seized $10,025 from the defendant after he attempted to furnish bail for a prisoner at the Wakefield Police Department. Among other arguments, the Commonwealth asserts the defendant has no standing to pursue his motion. For the foregoing reasons, the Court DENIES defendant’s motion.

*737
BACKGROUND

On May 10, 2000, Wakefield police arrested Pedro Diaz (“Diaz”) after he sold a quantity of cocaine to an undercover officer and charged him with Distribution of a Class B substance. When the booking procedure began, Diaz initially spoke fluent English and cooperated with police. In the course of that procedure, however, Diaz told police that he was an illegal alien originating from the Dominican Republic and that he did not speak English. A Spanish speaking officer was called to continue booking. Diaz’s change in behavior and body language coupled with his evasive answers made police suspicious of his true identity.
Shortly after Diaz’s bail was set for $10,000, the police department received an anonymous phone call inquiring about Diaz. About two hours later, Rafael Benzan (“Benzan”) and Francis Gurerro (“Gurerro”) arrived at the Police Headquarters and Benzan told police that that they were there to bail somebody out. Specifically, Benzan stated that he had $10,025 in cash on his person but was unsure of the identity of the person for whom he was providing bail. Benzan agreed to speak with police in the Department’s inspection room, where he was advised of his Miranda rights. Benzan told police that he understood his rights and would assist them in any way necessary.
Police informed Benzan that they were trying to uncover Diaz’s true identity. Benzan stated that he did not know and had never met Diaz. When police inquired about Benzan’s motives for posting bail, Benzan said that he received a telephone call from Attorney Nelson Geidman from Boston, who Benzan believes has a reputation for representing drug dealers, and Geidman told him that some people would be arriving shortly at Benzan’s office with money to bail out a prisoner at the Wakefield Police Department. Geidman provided no further information. Accordingly, at 6:30 p.m. two boys delivered $10,025 in cash to Benzan’s Roxbury office. Benzan did not know the boys, did not have any conversation with them, nor did he provide them with a receipt for the money. Benzan expected to be compensated between two and three hundred dollars based on similar trips he had made for Geidman in the past. Although Benzan asked his friend Guerrero to accompany him to the police station for safety reasons, Guerro was unaware of the bail money.
The police asked Benzan if they could examine the money more closely with a trained police dog, since they were concerned that the bail money was related to the distribution of illegal drugs. Benzan agreed, again stating that he did not know where the money came from, and told the officers that he did not want any problems. After counting the money with Benzan, the police placed it into two separate envelopes. The police also placed computer printout paper into two similar envelopes. When presented with all four envelopes, a narcotics trained police dog immediately alerted officers to the two envelopes containing the money. The police believed that the bail money was related to the distribution of illegal drugs, and informed Benzan that it would be seized in accordance with G.L.c. 94C, §47, which in pertinent part allows the Commonwealth to seize and forfeit “All moneys, . . . furnished or intended to be furnished by any person in exchange for a controlled substance ... [as well as] all proceeds traceable to such exchange.” G.L.c. 94C, §47(a)(5). Mr. Benzan said that he understood and asked for a receipt for the money.
Procedurally, on June 5, 2000, the court granted the Commonwealth’s ex parte motion for a preliminary order of custody of the $10,025 pursuant to G.L.c. 94C, §47(f)(l), which provides in part that, “seizure of said property shall issue only upon a showing of probable cause . . .’’In opposition, Benzan filed the present motion to dismiss the Commonwealth’s suit for forfeiture.

DISCUSSION

Benzan’s motion to dismiss alleges that the Commonwealth’s complaint fails to state facts sufficient to satisfy the standard of probable cause necessary to hold a forfeiture hearing. Specifically, Benzan contends that the Commonwealth has failed to prove that a nexus exists between drugs and the money seized that amounts to probable cause. The Commonwealth opposes the motion on numerous grounds, including (1) Benzan’s failure to intervene as required by Mass.R.Civ.P. 24(c); (2) Benzan’s lack of standing to contest the forfeiture proceeding; and (3) the Court’s previous finding of probable cause at the preliminary injunction hearing. Since proper standing is a jurisdictional prerequisite to being allowed to press the merits of any legal claim, see R.J.A. v. K.A.V., 34 Mass.App.Ct. 369, 373 n.8 (1992), the first issue addressed by the Court is whether Benzan has standing to sustain his motion to dismiss.
In general, only persons who have themselves suffered, or who are in danger of suffering legal harm can compel the courts to “assume the difficult and delicate duty of passing upon the validity of the acts of government.” Tax Equity Alliance v. Com'r of Revenue, 423 Mass. 708, 711 (1996); see also Local 1445, United Food & Commercial Workers Union v. Police Chief of Natick, 29 Mass.App.Ct. 554, 559 (1990) (persons who seek to maintain an action against the government must be able to describe impairment of an economic or civic interest). Furthermore, the Supreme Judicial Court has held that under G.L.c. 94C, §47, a claimant must prove that he or she has “an ownership interest in the property sufficient to establish standing to contest the seizure and resulting forfeiture.” Commonwealth v. One 1986 Volkswagen GTI Automobile, 417 Mass. 369, 374 (1994) (in interpreting G.L.c. 94C, federal law is guiding since the statute is modeled on the Comprehensive Federal Drug and Control Act, 21 U.S.C. §881) (hereinafter “One Volkswagen"). The *738 Commonwealth argues that Benzan does not have a sufficient ownership interest in money only recently brought to him for another transaction.
To determine what is a sufficient ownership interest, one’s “indicia of dominion and control such as possession, title, and financial stake” must be examined. Id. at 373. Thus, ownership evidenced by custody plus a right of interest, or an intent to control, is sufficient to create standing to challenge forfeitures. See Mercado v. U.S. Customs Service, 873 F.2d 641, 644-45 (2nd Cir. 1989). Accordingly, in One Volkswagen, 417 Mass, at 375, the son of the record owner of a vehicle had standing to contest its forfeiture since the son, although not the owner, exercised dominion and control evidenced by parking the car regularly by his house and by installing an elaborate sound system. In United States v. One 1971 Porsche Coupe Auto., 364 F.Sup. 745 746-48 (E.D.Pa. 1973), the claimant, who purchased a vehicle for her son who had sole possession and exercised total dominion, did not possess a sufficient ownership interest to contest its forfeiture even though she maintained legal title.
Additionally, when a bailee asserts a possessory interest in seized property and discloses the bailors’ identity, standing exists. United States v. $260,242.00 in United States Currency, 919 F.2d 686, 688 (11th Cir. 1990); see also United States v. $191,910.00 in U.S. Currency, 16 F.3d 1051, 1057-58 (9th Cir. 1994). Applying this principle, courts have found proper standing in forfeiture actions where the claimant has asserted that the money in their possession was being held for their clients, see $191,910.00 in U.S. Currency, 16 F.3d at 1058; their siblings, see U.S. v. $38,000.00 in United States Currency, 816 F.2d 1538, 1544 (11th Cir. 1987); and their spouse. See United States v. $122, 043.00 in United States Currency, 792 F.2d 1470 (9th Cir. 1986).
On the other side, however, the rule that applies to Benzan is that “naked claims of possession” involving bare claims of legal title without some color-able interest, will not suffice to challenge a forfeiture hearing. See Mercado v. U.S. Customs Serv., 873 F.2d at 645; see also U.S. v. $81,000.00 in U.S. Currency, 189 F.3d 29, 35 (1st Cir. 1999); $191,910.00 U.S. Currency, 16 F.3d at 1058, United States v. Contents of Accounts Nos. 3034504504, 971 F.2d 974, 985 (3rd Cir. 1992). Thus, in Mercado, the court rejected the claimant’s challenge to police seizure of money from his luggage after he stated that he did not know he was carrying the money, did not care if the police seized the money, and refused to accept a receipt for the seized funds. Mercado, 873 F.2d at 645. Similarly, in Contents of Accounts Nos. 3034504504, 971 F.2d at 985, a corporation, alleged to have acted as a “straw owner” of its forfeited accounts, lacked standing because there was no evidence that the corporation had engaged in legitimate account transactions, and thus the accounts actually remained controlled and owned by its president. SinceneitherMercadonorthecorporations’ members would have suffered an injury redressable by the return of the seized property, see id., neither exhibited sufficient standing to pursue their claims.
Without reaching other procedural issues, the Court agrees with the Commonwealth that Benzan lacks standing to sustain his motion to dismiss.[2] Benzan has no cognizable claim of ownership. Although he knew that he was in physical possession of money, he did not know where the money came from, to whom it belonged, nor the identity of the person for whom the money was to be posted as bail. Benzan, therefore, did not possess the requisite control over the money in this case. Moreover, Benzan’s claim fails as a bailee, since his tale of phone calls, instructions and drop offs, are a far cry from the definitive identification of a bailor as required by law. Instead, Benzan is an “unknowing custodian” who suffered no injury warranting the remedy he seeks. See Mercado, 873 F.2d at 645 (explaining that claimants with no indicia of reliability or substance must be prohibited from litigating their claims to reduce the likelihood of false or frivolous suits). Benzan repeatedly told police that he did not know who the money belonged to; implicit in that assertion is that the money did not belong to him, and that he did not know who the real owner was, only that Geidman might be another intermediary. Although there may be a claimant with adequate standing to challenge the Commonwealth’s actions, such reason is not sufficient to find standing where none exists. Tax Equity Alliance, 672 N.E.2d at 509, see also Razin v. Razin, 332 Mass. 753, 754 (1955) (“Courts are not established to enable parties to litigate matters in which they have no interest affecting their liberty, rights, or property”). Thus, because the Court has no authority to allow Benzan to continue challenging the Commonwealth’s seizure and ultimate forfeiture of the money, Benzan’s motion to dismiss is DENIED.

ORDER

For the foregoing reasons, defendant’s motion to dismiss is DENIED.

The exact identity of the defendant is unclear from the record. In its cover letter and the accompanying certificate of service, the defendant is named Rafael Benzan, “the person from whom the $10,025 was taken.” Additionally, the memorandum of law in support of the motion Is signed by Attorney Geidman on behalf of Benzan. However, in the body of that memorandum, the named defendant is “subject res” or “the Moneys.” Since it is well settled that only owners of the property, not representatives of the property, have standing to challenge a forfeiture action, see United States v. One Parcel of Real Property, 831 F.2d 566, 567 (5th Cir. 1987) (piece of real property which was subject of forfeiture action under the federal forfeiture statute did not have standing to contest its own forfeiture, neither did attorney purporting to represent the property, since neither claim was not that of a person); see also U.S. v. $47,875.00 in U.S. Currency, 746 F.2d 291, *739 293-94 (5th Cir. 1986) (parents who lent money to child who used it to buy drugs had no standing to challenge its seizure since they were not its owners), the Court assumes that Benzan, acting in his capacity as owner of the money seized, is the defendant in the present motion.

The Court notes, however, that according to the record, Benzan has not complied with Mass.R.Civ.P. 24(c), which requires him to serve a formal motion and a pleading upon the Commonwealth setting forth the grounds and claims or defense for which intervention is sought.